Carroll,
Dec. 26, 1917.

### STATE *v.* FREDERICK L. SMALL.

A verdict of guilty of murder, based upon circumstantial evidence, and upon evidence of the pecuniary motive of the respondent and his hostility toward the deceased, was sustained.

Whether a particular apparatus could be so adjusted as to start a fire at any time within ten hours thereafter is a proper hypothetical question, if based upon facts suggested by the evidence.

In a trial for murder, the exhibition of the head of the deceased to the jury may be made for the purpose of showing the state's claim as to the manner in which the crime was committed.

The objection that a witness failed to identify exhibits with sufficient certainty is an objection not to his competency but to the weight of his testimony.

The exclusion of evidence on the ground of remoteness is not open to exception.

Counsel *arguendo* may state inferences drawn from facts in evidence.

The appearance of witnesses and their apparel may be proper matter for comment in argument.

An assertion by counsel for the state that the respondent "paid out practically a quarter of what he had, so far as the evidence in this case goes," was proper, in the absence of other evidence as to respondent's means.

Testimony having been given that the respondent, holding up his hand, said to a witness, "This hand can do anything," the argument of counsel for the state that this statement indicated self-confidence, was legitimate.

A respondent, whose counsel *arguendo* has made insinuations upon the character of the county solicitor, cannot complain if other counsel for the state refer to his upright character as evidenced by his conduct during the trial.

The overstatement in argument of an admission made by the respondent's counsel is not ground for setting aside a verdict if such statement is not the introduction of a new fact but relates to matter already fully before the jury.

Counsel for the state *arguendo* urged that, if the respondent failed of his just deserts, jury trial would be a failure, and expressed a hope that the jury's conclusion would be right and satisfactory to the people of the county and state. This language was not an attempt to influence the jury by a reference to public opinion, the jury not being informed what public opinion was.

INDICTMENT, charging murder in the first degree. Plea, not guilty. Trial by jury, and verdict, guilty of murder in the first degree, with capital punishment.

The defendant objected that the evidence of the state was insufficient to authorize the submission of the case to the jury and that upon the whole case he was entitled to a verdict as matter of law.

He also objected in seven instances to the admission of evidence offered by the state and in one to the exclusion of evidence offered by him and in twenty particulars to the argument in behalf of the state. Upon the overruling of these objections the defendant in each instance duly took exceptions, and a bill of exceptions was allowed by *Kivel*, J., at the December term, 1916, of the superior court. The facts sufficiently appear in the opinion.

*Mathews & Stevens* and *Sewall W. Abbott* (*Mr. Mathews* orally), for the defendant.

*Walter D. H. Hill*, solicitor, and *James P. Tuttle*, attorney-general, by brief and orally for the state.

PLUMMER, J. No important or difficult questions of law are presented by the exceptions. Substantially all the questions are questions of law only because they are such as require decision by this court.

Whether the record contains evidence authorizing the submission of the case to the jury, or presents facts upon which the verdict found may legally be rested, is a question mainly of fact which can be answered only by an examination of the record. Exhaustive and careful study of this record of the evidence before the jury, leaves no room for question as to the legality of the action of the trial court in invoking the judgment of the jury upon the charge made by the state. The state claimed that the defendant, Frederick L. Small, murdered his wife, Florence Arlene Small, on September 28th, 1916, in a cottage in which they were living upon the shore of Ossipee lake in Ossipee, and to obliterate the evidence of

the murder destroyed the cottage by fire, that the motive for the crime was to recover $20,000 upon a joint policy of insurance upon the lives of the defendant and his wife, whom he had threatened with bodily violence and death. That the crime charged was committed by some one, and that Mrs. Small was murdered September 28, 1916, was conclusively established and admitted. To fasten the crime upon the defendant the state relied upon circumstantial evidence, and the motive furnished by the opportunity to realize the insurance and the defendant's want of affection for his wife.

Where there is direct evidence of a crime, the motive prompting it may not be of importance in establishing guilt. But where, as in this case, the evidence is wholly circumstantial, a motive that might induce a person to commit the crime may be of moving and compelling force. A sane person, though cruel and wicked, does not run the risk of life imprisonment or death unless impelled by some powerful motive which moves him to cast aside all consideration of punishment and humanity in order to accomplish his purpose. "Motive is the moving power which impels to action for a definite result." *People* v. *Molineux,* 168 N. Y. 264, 297; *People* v. *Fitzgerald,* 156 N. Y. 253, 258; *In re Eaves,* 30 Fed. Rep. 21, 26.

March 4, 1916, through one Merritt, general agent for the insurance company, Small secured a joint policy of insurance for $20,000 upon his own life and that of his wife, payable to the survivor, paying therefor a premium of $1,107.60. Before making this payment Small had in bank on deposit $4,835.71; he owned the Ossipee lake cottage upon which, and contents, he had a fire policy of $3,000. This comprised his entire property as disclosed by the case except that at one time he had some currency, the amount of which did not appear, in a safe deposit vault. What his annual income or means of earning an income were, was not shown. The evidence as to the nature of Small's regard for his wife is of various instances from 1912, soon after the marriage, up to within a month of her death. He frequently addressed to her violent and profane language, saying in her presence, that he had hit her in the head with a boot-jack; that he ought to kill her and would yet. And, at another time, he threatened to strike her with an oar. On two occasions, a woman's screams were heard in the night coming from the cottage when occupied only by Small and his wife. Mrs. Small was last seen alive at the cottage at about 11 a. m., September 28. Small left the cottage at about 2.30 p. m. of that day, being driven in a carriage to the railroad station at Mountainview, where with a friend he took a train

for Boston, arriving at 8 p. m.   The cottage was discovered to be
on fire about 10·p. m., and an hour later was practically consumed.
The next morning the charred remains of Mrs. Small's body,—with
a cord about the neck showing she was strangled, a mask over the
face, a bullet hole through and other injuries to the skull,— were
found in the ruins.   At about midnight, Small, in Boston, was noti-
fied by telephone of the fire and returned to Mountainview by auto-
mobile, reaching there about 4.30 a. m., but not going to the cottage
until about six o'clock.   The state offered evidence of statements
of defendant as to Mrs. Small's condition, made before her body was
found, subsequently proved false, and tending to show knowledge
of the crime; of his inquiry of his companion before starting on the
return trip whether he thought Merritt, the insurance agent, would
be all right about the insurance; and of a claim made when he was
arrested that the person who drove him to the railroad station the
day before, saw Mrs. Small and heard her bid him good-bye and ask
him not to forget an errand, which was contradicted by the driver
who testified he did not see or hear Mrs. Small.   The state also
offered  evidence tending  to show an arrangement such as would
cause fire to break out in the building some hours after Small left.
Evidence of many other circumstances, corroborating more or less
strongly the state's theory, was put before the jury, which it is un-
necessary to review.   Enough has been recited to make it clear that
the jury had before it evidence which, if believed with the inferences
that might be drawn therefrom, fully authorized the verdict.

As the fire was first discovered some seven or eight hours after
the defendant left the cottage, the state endeavored to prove that a
device could be constructed which would start a fire after such
lapse of time.   One method suggested involved the use of  an
alarm clock and certain electrical apparatus.   The remains of such
a clock and apparatus having been found in the ruins, the state was
permitted to inquire of witnesses called by it whether with such
apparatus a fire could be started at any time within ten hours in the
future.   There was no objection to the competency of the witnesses.
The hypothetical questions were unobjectionable.   They were
asked upon an assumed state of facts suggested by the evidence as
to a matter upon which it must here be assumed the witnesses were
found or conceded to have special knowledge.   *Challis* v. *Lake*,
71 N. H. 90, 93.

Mrs. Small's head was competent evidence of the cause of death.
If the exhibition was not made for the purpose of proving some fact

material to the issue, it should not have been allowed. *Nebonne* v. *Concord Railroad*, 68 N. H. 296. The bill of exceptions does not show that the evidence was offered or used for an improper purpose. On the contrary, it appears the exhibition was permitted because such exhibition was reasonably necessary in support of the state's claim as to the manner in which the crime was committed. It does not appear there was no evidence in support of this finding, and upon it the exception presents no question of law.

The evidence of the heat of a hot wood fire combined with the evidence of the presence of a chemical producing much greater heat may have been material. There is no ground upon which it can be said the evidence was incompetent as matter of law. The evidence of the witness Wedger, that melted iron found in the ruins was a reaction of a chemical called thermit was competent as one of the circumstances in the case. The evidence was not rendered incompetent by the failure of the state to prove the defendant's possession of thermit.

The objection that the witness Hodsdon failed to identify with sufficient certainty certain exhibits of the state, claimed to have been found in the ruins of the cottage, is an objection not to the competency but to the weight of his testimony.

The evidence offered by the defendant, as to the number of portable saw-mills around Ossipee Lake, presented a collateral issue. Its exclusion by the trial court upon the ground of remoteness is not open to exception. *State* v. *Wren*, 77 N. H. 361, 363.

By agreement of counsel, exceptions to the state's argument were reserved until its close. The defendant then specified twenty particulars in which he claimed the argument exceeded the limits of legitimate advocacy. Thereupon, as the agreement necessarily implied he might do, the attorney-general altered his statements in four instances. What is legitimate argument has been so often discussed, that even in a case of this importance it is unnecessary to cite authority. The statement to the jury, by counsel, of material facts not in evidence, is error, as is also the presentation in like manner of irrelevant facts calculated to prejudice the jury. Misconduct of this character is fatal to the verdict unless the error is cured before the jury take the case. But the statement of facts as an inference from the facts proved is not improper. The question is whether counsel is testifying, furnishing the jury information as of his own knowledge, or arguing, asking them to infer, from facts proved, the fact he relies upon. *Kambour* v. *Railroad*, 77 N. H.

33, 52. Whether the fact claimed to be established can be inferred from the facts proved is a question of law. An error of counsel as to the law does not avoid the verdict unless the court expressly or tacitly approves, subject to exception, the erroneous principle so as to make it the law of the case.

Seven objections (numbered 1, 2, 4, 7, 9, 16, 17), taken by the defendant, are to the terms in which the attorney-general characterized the defendant, in that he referred to him as an "imp of Satan" a "disciple of Satan," "a satellite of the infernal regions," and as a "man of craft, mystery and blood." The record does not contain the indictment but, if in the ancient form, it alleged that the defendant "not having the fear of God before his eyes, but being moved and seduced by the instigation of the devil . . . did, etc." 3 Chit. Crim. Law *750. While these words are not necessary, their insertion would not avoid the indictment. Wharton Prec. Indict. (114) 72. The amenities of modern times, it is believed, generally now omit this descriptive language from the indictment. Whether refraining from similar opprobrious suggestions in the argument for the state would have been more dignified, in better taste and more helpful toward the result sought,— a verdict for the state,— is not for this court. The argument did not go outside the case. There was evidence from which it could be inferred the respondent was such a man as the state's counsel said he was. The specific terms employed forcibly present the moral degeneracy of his character as viewed by the state. The language was such as the state's counsel might legally use. The responsibility for its use rests with him. It is to be borne in mind that the defendant's guilt or innocence was not the only issue for discussion. Under the law (Laws 1903, *c.* 114, *s.* 1) two issues were before the jury, the defendant's guilt and the punishment of the crime. Contending the respondent should be hung, the state's counsel could not well refer to him as a follower of the meek and lowly Jesus, as a saint. The terms used seem more appropriate.

Three exceptions (numbered 3, 8, 12) are based upon a claimed misstatement of evidence. The objection is overruled because there was no misstatement of any consequence. In number 15, upon the matter being called to his attention, the statement was corrected by the attorney-general to exact agreement with the evidence.

In number 10, the attorney-general in referring to one of the witnesses remarked upon the character of his apparel. The appearance of witnesses is proper subject for consideration by the jury

and, of course, of comment in argument. The expression, "gambler's suit," by which the clothing was described, was withdrawn upon objection. It cannot be said as matter of law that the character of the clothing the witness chose to wear may not have been some index of the kind of man he was. "The apparel oft proclaims the man."

Objection was made (number 15) because it was said that the defendant paid out a quarter of all he was worth for a life insurance policy, when there was no evidence how much he was worth. When counsel first referred to this matter, he said: "Paid out practically a quarter of what he had, so far as the evidence in this case goes." If the defendant had other property so that no inference could properly be drawn from the large payment for life insurance upon the life of his wife, that was matter for him to show. In the absence of such evidence the argument was properly made from the evidence in the case. The later reference to the matter in answering a supposititious case, suggested by defendant's counsel in argument, could only have been understood as referring to the facts in evidence. This statement was also corrected upon objection.

Number 5 was a request to the jury to draw an inference. It contains no assertion of a fact. Whether any person but the defendant had or could have any interest to do what was done as it was done, was a consideration the jury might take into account. The argument objected to merely forcibly presented this consideration to the jury.

There was evidence that the defendant, holding up his hand, said to a witness, "this hand can do anything." When the evidence was offered, the defendant objected, and the court remarked that the evidence bore upon his mechanical ingenuity and that it might be admitted for that purpose. And it was so admitted. In argument, the attorney-general referred to the remark as indicating self-confidence. (Objections numbers 6 and 13). This was a fair inference from the remark. Strictly, it was not evidence of the defendant's mechanical ingenuity, but of his own opinion of his abilities. The use made of the evidence was legitimate and it does not seem probable it could have been intended to limit the effect of the evidence to an admission that the defendant was skilful in the use of tools. It is sufficient that it was not argued, as claimed by the defendant, that a hand that could do anything would commit murder.

In answer to certain insinuations as to the conduct of the case, the attorney-general regarding them as imputations upon the char-

acter of the county solicitor, who seems to have prepared the case, thought it necessary to discuss his character to some extent. (Objection number 11). But he was careful to base his remarks upon the conduct of the solicitor in the fourteen days of trial before the jury and his appearance before them. Having raised the issue the defendant cannot complain of its discussion upon competent evidence.

Counsel stated perhaps rather strongly (number 14) the admissions of counsel for defence and argued therefrom. Upon objection being made, he qualified his statement by saying, he only intended to claim they admitted a crime had been committed. This they certainly did. If the admission was overstated, it was not the introduction of a new fact but a statement in regard to a matter before the jury and as to which they had full information. Both counsel and court cautioned the jury to rely upon their own recollection of the evidence and they were specially instructed not to consider any statements of counsel which were not in accord with the evidence as they recalled it. There is no evidence the instruction was not followed.

In closing his argument, the attorney-general in substance urged that if the defendant failed of his just deserts, jury trial would be a failure, expressed a hope that the jury would soon return to their families and be favorably received; that they would soon arrive at a right conclusion and that the conclusion would be satisfactory to the people of the county and state. To these ideas, condensed from the rhetoric of their expression, the defendant objects (numbers 18, 19, 20) as an attempt to influence the jury by a reference to public opinion, but the jury were not informed as to what public opinion was. They were asked to do justly by the defendant and to render a right verdict. Such action and such a verdict was the defendant's right. He was entitled to no more.

The exceptions in this case are such as in an ordinary case would demand scant consideration. But because of the importance of the case they have been most attentively considered and the record, examined. If in any case a court of review, satisfied that justice in the main has been done, is authorized to disregard minor errors, this is such a case. But this principle relied upon by the state need not be discussed. No error of law is presented by the exceptions.

*Exceptions overruled.*

**All concurred.**