Cheshire,  }
May 7, 1918. }

## STATE *v.* JOHN W. DINAGAN.

If one wilfully and maliciously burn a dwelling-house, he may be convicted under P. S., c. 277, s. 1, whether the house be his own or that of another.

The argument of counsel for the state,—"Will you permit counsel to crucify such a witness [referring to a witness for the state] in order that a villain and criminal may go free? If so the responsibility towards citizens of C county and towards your God is with you,"—being justified by the evidence was legitimate.

The argument,—"Consider the oath you have taken to find the true verdict between the state and the prisoner,"—is no more than asking the jury to do what they had sworn to do and is unobjectionable.

INDICTMENT for arson. Trial by jury and verdict of guilty. The indictment alleged that "John W. Dinagan, . . . with force and arms, a certain dwelling-house, otherwise called a hotel situated in Chesterfield in said county of Cheshire, of the property of one Mary J. Dinagan, wilfully, feloniously, and maliciously, did set fire to, burn and consume." At the conclusion of the state's evidence the respondent moved to dismiss the indictment on the ground of variance between the allegations in the indictment and the evidence as offered by the state. This motion was denied and the respondent excepted.

During his argument the attorney-general made the following statement: "Will you permit that woman who has looked into your eyes and told her story in a way that wasn't possible for an unlettered woman to tell unless it was actually so,—will you permit distinguished counsel to crucify such a witness in order that a villain and a criminal may go free? If so, gentlemen, the responsibility towards citizens of Cheshire county and towards your God is with you, and if on some other occasion some other villain, some other

fire brand, shall rise up that shall out-Dinagan Dinagan, and some humble dwelling· house be lost, and some life go to its Maker because of the fire, the responsibility, gentlemen, will rest upon you. "

At this point, the respondent excepted. Whereupon the attorney-general continued: "I call your attention to the situation, gentlemen, with all sincerity, and, gentlemen, when you measure up the facts in this case, consider the oath you have taken to find the true verdict between the state of New Hampshire and the prisoner at the bar. "

To the above statements the respondent excepted. A bill of exceptions was allowed at the April term, 1917, of the superior court, by *Kivel*, C. J.

*James P. Tuttle*, attorney-general, and *Roy M. Pickard*, solicitor (*Mr. Pickard* orally), for the state.

*Richard J. Wolfe* and *Doyle & Lucier* (*Mr. Lucier* orally), for the respondent.

PLUMMER, J.   Arson at common law "is the malicious and wilful burning the house or out-house of another man." 4 Blackstone Comm. *219.   Hence at common law the respondent could not have been convicted of arson in this case, because the evidence disclosed that he was the habitant of the house burned, and not Mary J. Dinagan.   In other words, it would not have been the burning of a dwelling-house of another.   But the common law relative to arson is not in force in this state.   In 1791, acts were passed making the burning of a dwelling-house of another in the night time a more serious offense, than the burning of it in the day time, also including other kinds of property.   Laws, *ed.* 1792, *p.* 245.   In 1829, the laws relating to burning property were changed, and the distinction between burning in the night and day time disappeared.   Laws, 1828, *c.* 91, *s.* 9.   When the legislature of 1842 enacted the Revised Statutes, it adopted substantially the recommendations of the commissioners on revision, relating to the burning of property, in which the words "of another" were omitted. Comm'rs Rep. 1842, *c.* 218, *ss.* 1–3; Rev. St., *c.* 215, *ss.* 1, 2, 4.   These statutes, except as to punishment, are the same that are in force today. P. S., *c.* 277, *ss.* 1–3.

Section 1 of chapter 277 of the Public Statutes, under which the indictment in the present case was found, is as follows: "If any per-

son shall wilfully and maliciously burn a dwelling-house, or an out-building adjoining thereto, or any building whereby a dwelling-house shall be burned, he shall be imprisoned not exceeding thirty years." The title of this chapter is "arson and burning property." And the marginal annotation opposite section 1 is "arson, how punished." It is said this indicates that common law arson is intended. *Doe,* J., in *State* v. *Hurd,* 51 N. H. 176, discussed this question, and pointed out that "the index at the head of [a] chapter cannot be wholly re-lied upon as an accurate designation of the subject matter of legisla-tion," and then said: "A man may maliciously beat his own horse,— *State* v. *Avery,* 44 N. H. 392,—and he may maliciously burn his own dwelling. If he burns it for the purpose of destroying the home and lives of his wife and children, when they happen without his knowl-edge to be absent, the burning may be malicious: and there may be malice in other cases. The legislature might well have intended to provide for such cases, and to remedy a defect of the common law, which has been cured by statute in England. The omission of the terms 'arson' and 'of the property of another,' in the body of the statute, may well be taken as an intentional remedy of that defect, making section 1 to include not merely common law arson, but some-thing more. In a condensed enumeration of the contents of the chapter, the word 'arson' might well enough be used as an abbrevi-ated expression to answer the practical purpose of conveying a gen-eral, though not a complete and precise, idea of the subject-matter of section 1."

If it can be found that the respondent wilfully and maliciously burned a dwelling-house, that is sufficient to warrant a conviction under our statute, and it is of no consequence whether the dwelling-house was his own, or that of another. The burning by the owner of his own dwelling-house for the purpose of acquiring the insurance upon it, would be a wilful and malicious burning of the house. It could be found from the evidence in this case that the dwelling-house at the time of the fire was over-insured, and that it was burned by the respondent to defraud the insurers. The indictment alleging that the respondent wilfully and maliciously burned a dwelling-house is sufficient. And the proof warranted the verdict of the jury.

The indictment alleges the dwelling-house was the property of Mary J. Dinagan and the allegation was proved as laid. If the allegation could be construed as alleging the occupancy of the house in Mrs. Dinagan, as claimed by the respondent, the allegation would be an immaterial one. "The statement of ownership was necessary

at common law, because it was not arson for a man to set fire to his own house. But under the statute it is otherwise; and therefore the averment of ownership is an immaterial averment." *The Queen* v. *Newboult,* L. R. 1 Cr. Cas. Res. 344, 347. Here as in England the defect of the common law is cured by statute. *State* v. *Hurd, supra.* An immaterial averment need not be proved. *State* v. *Langley,* 34 N. H. 529.

The attorney-general, in his closing argument to which the respondent excepted, indulged in vigorous figures of speech. But we do not think that they were of a character to render the trial unfair and destroy the verdict. He said: "Will you permit distinguished counsel to crucify such a witness [referring to the principal witness for the state] in order that a villain and a criminal may go free." The attorney-general here used crucify in the sense of discredit, and by this term urged the jury that they should not permit counsel to discredit, and destroy the power of the state's evidence, and let a villain and criminal go free. This was legitimate, and the characterization of the respondent was justified by the evidence.

He then called to the jury's attention their responsibility to the citizens of Cheshire county, and to their God, not only in relation to this case, but also to future cases of like character. As to the present case the jury were legally and morally bound to find the respondent guilty, if the evidence was sufficient to require it. It was this responsibility that the state's counsel was endeavoring to impress upon the jury in figurative speech. The statement that the responsibility for future crimes of this character would rest upon the jury, had reference, of course, to their moral responsibility, and must have been so understood by them. The object of the punishment of crime not only includes the punishment of the criminal, and protection of society against his acts, but also the protection of society against all persons criminally disposed. There is no doubt that vigorous enforcement of the law lessens the commission of crimes. In this sense the jury were to some extent responsible for the future commission of crimes in the county. The language used to impress this responsibility upon the jury was very forcible and rhetorical, but within the limits of legitimate advocacy.

The exception of the respondent to that portion of the argument in which the jury were asked to consider the oath they had taken, and find a true verdict between the state of New Hampshire and the prisoner at the bar, is without merit. Following his previous remarks he was asking the jury to do nothing except what they had

sworn to do, and there was no objection to calling their attention to the oath they had taken. The argument to which exceptions were taken in this case is similar to that in *State* v. *Small*, 78 N. H. 525. The exceptions in that case were overruled, and the same disposition is required of the exceptions here.

                                                 *Exceptions overruled.*

All concurred.