Hillsborough, }
June 27, 1929. }

### STATE *v*. HASSAN ROUSTEN.

*John L. Sullivan*, solicitor, for the state.

*Timothy F. O'Connor* and *Nicholas J. Costakis*, for the defendant.

MARBLE, J.   1. The statute makes it a punishable offense for any person wantonly and maliciously to "prevent an electric meter from duly registering the quantity of electricity supplied, or cause it to be done." P. L., c. 355, s. 7.

The state's evidence tended to prove the following facts: In 1921 the defendant established a bakery business in Manchester under the name of the Nu-Fashion Bakery. He was the owner of the building and the sole proprietor of the business. During that same year electric meters were installed in his building. His trade name was entered on the books of the electric company, and he guaranteed in writing the payment of all bills. In 1923 the enterprise was incorporated with the defendant as president and treasurer.

On October 27, 1927, a meter reader visited the bakery and discovered that a short wire called a jumper had been attached to the outside wires of the meter, thereby diverting the current and preventing the meter from registering. The defendant was not in town at the time, but when the situation was explained to him he merely stated that he hadn't time to discuss the matter. This meter had been tampered with on at least two prior occasions. On one of these occasions the defendant "admitted that the current had been stolen" and paid the estimated loss to the company. The defendant was in full charge of the building and the business. He had an office on the premises, handled all the money, and attended to the payment of all bills and to the purchasing of all supplies. Except for short business absences, he was present in the building for eight hours each day.

This evidence, though circumstantial, was clearly sufficient to justify the denial of the motion for a directed verdict.

2. The defendant also claims that the court erred in admitting evidence of former instances when current had been diverted from the meter by means of a jumper. The conduct of the defendant in relation to these occurrences, even if it did not evince a design to cheat the company (*State* v. *Hinton, ante,* 75), at least tended to prove "the respondent's connection with the occupancy of the premises" and his control of the meter. The jury were so instructed, without objection, and were also expressly cautioned that the evidence of these prior acts was not evidence that the defendant had committed the offense for which he was on trial. The admission of the evidence with this limitation furnished no legitimate ground for complaint.

3. The indictment alleges that the defendant, on October 27, 1927,

"did wantonly and maliciously prevent an electric meter of the Public Service Company of New Hampshire, a corporation duly established by law, from duly registering the quantity of electricity supplied to him, the said Hassan Rousten, by the said Public Service Company of New Hampshire." The second count charges the defendant with having caused a contrivance to be placed on certain wires so as to prevent the said meter from registering the quantity of electricity supplied to him.

The defendant claims that there is a variance between the allegations and the proof, since the indictment states that the electricity was supplied to him personally, while the evidence indicates that it was furnished the Nu-Fashion Bakery, a corporation. It is not necessary under the statute that the electricity diverted from the meter should be supplied to the person who commits the offense. Consequently the averment in question would seem to be immaterial. See *State* v. *Dinagan*, 79 N. H. 7, 10; *State* v. *Dame*, 60 N. H. 479, and cases cited. The defendant is entitled, however, to a plain, fair and full description of the offense charged. Bill of Rights, *art.* 15; *State* v. *Silverman*, 76 N. H. 309.

"The object of the indictment is, first, to furnish the accused with such a description of the charge against him as will enable him to make his defense, and avail himself of his conviction or acquittal for protection against a further prosecution for the same cause; and, second, to inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction, if one should be had." *United States* v. *Cruikshank*, 92 U. S. 542, 558.

There is no contention that the indictment in the present case does not meet the second requirement, nor does the defendant rely upon the theory that he could not successfully plead his present conviction if he were ever again prosecuted for the same offense — a theory which "has led to more absurd decisions than almost any other." 24 Harv. Law Rev., 290, 292. He objects to the indictment merely because it is the common-law rule that the description must be proved as alleged (*State* v. *Kelley*, 66 N. H. 577; *State* v. *Bailey*, 31 N. H. 521; *State* v. *Clark*, 23 N. H. 429, 433; *State* v. *Canney*, 19 N. H. 135, 138; *State* v. *Copp*, 15 N. H. 212), but does not suggest that he has been misled or that any other injustice has been done him.

"The Anglo-Saxon idea of an indictment came from the technical rules of pleading in civil actions adopted centuries ago. It lost sight entirely of that part of the procedure which related to the proof,

and sacrificed everything for a scientific system of allegations." 24 Harv. Law Rev. 290, 294. In the light of modern conditions any complaint or indictment should be considered adequate if it informs the defendant "of the nature and cause of the accusation with sufficient definiteness" so that he can prepare for trial. *Ib.*, 295. It is preposterous to say in the present instance that the indictment did not give the defendant the requisite information.

Moreover, on a careful examination of the evidence, with the rule in mind that indictments are governed by the ordinary use of language (*Jones* v. *Surprise*, 64 N. H. 243, 245, and cases cited; *State* v. *Pratt*, 14 N. H. 456), it is by no means certain that the allegation objected to is not strictly correct and that the electricity in question was not supplied to the defendant personally.

In 1921, when the contract for service was made with the electric company, the Nu-Fashion Bakery had not been incorporated and the defendant was its sole proprietor. The salesman with whom the arrangements were made testified: "Mr. Rousten came in and ordered the meter set in this Nu-Fashion Bakery Company at 104 to 113 Spruce street, and I asked him who the owner was, because we don't accept a name like that for our records. We want to know who will be responsible and pay the bills. Mr. Rousten said he was the Nu-Fashion Bakery. I says: 'Are you the owner?' (I knew he was the owner of the building), and he said he was."

The same witness stated that he did not know that the bakery had ever been incorporated. It does not appear that any modification of the original contract was ever made, nor is there any evidence that the company was ever notified of the change of ownership unless it can be found in the defendant's ambiguous statement: "I go good for the bill to the company when I loan that company." The defendant signed all checks which were given in payment of the service rendered, and was the person to whom the Public Service Company looked for pay. The superintendent of the company testified: "We have always looked upon Mr. Rousten as being the man who ran that business, not only because he guaranteed it, but he was attending to the business down there. . . . We have practically recognized no one else but him." The district manager stated that he knew nothing about the incorporation and that, according to his understanding, the defendant "was the whole thing," "owner, proprietor, manager and so on."

Whatever arrangements the defendant may have had with the corporation relative to the use and payment of the electric current

furnished him under the contract of 1921, the only reasonable inference to be drawn from the record is that this contract remained in force. Since at the time the contract was made, the defendant ordered the installation of the service for himself, and promised payment therefor, the allegation that the electricity was "supplied to him" does not constitute a variance in any sensible view of the case.

*Exceptions overruled.*

All concurred.