Rockingham
No. 80-356

PLAISTOW BANK & TRUST COMPANY

v.

REGINALD WEBSTER & a.

August 10, 1981

*Andernacht, Fleming & Hurd,* of Plaistow (*James F. Fleming* on the brief and orally), for the plaintiff.

*Shute, Engel & Morse P.A.,* of Exeter (*Paul R. Pudloski* on the brief and orally), for the defendant.

KING, C.J. In this declaratory judgment action, the defendants appeal from an order of the Superior Court (*Contas,* J.) that they reimburse the plaintiff for certain moving, storage, and kennel

charges incurred in connection with the plaintiff's eviction proceedings against them, or, in the alternative, that the furniture, furnishings, personal items, and animals be sold at public auction in order to reimburse the plaintiff. The defendants argue that the plaintiff used unreasonable force to dispossess the defendants from their former residence, that the writ of possession was void due to the judge's disqualification, that the plaintiff was estopped from asserting a claim against the defendants for the moving, storage, and kennel charges, and that the plaintiff failed to minimize its damages in that it refused to negotiate for the sale of the residence. Finding no reversible error, we affirm.

On March 10, 1978, the plaintiff, Plaistow Bank & Trust Company, received a judgment of $12,370.65 against the defendants, Reginald and Sharon Webster. Pursuant to a writ of execution, a sheriff's sale was conducted upon the defendants' East Kingston residence on June 8, 1978, and the plaintiff purchased the defendants' equity in the residence. The property remained subject to a $20,000 mortgage held by the Family Mutual Savings Bank and two other liens amounting to approximately $2,300. The defendant Reginald Webster testified that the property had been appraised at between $72,000 and $74,500.

The plaintiff was aware of the defendants' efforts to refinance their property in an attempt to redeem it within the statutory period. Apparently, the defendants successfully arranged for refinancing, but the plan failed when the plaintiff refused to subordinate its interest in the property to that of the refinancing party. The defendants ultimately failed to redeem the property within the statutory one-year period, and the defendants became tenants of the plaintiff in June, 1979.

On July 20, 1979, the plaintiff served the defendants with a notice to quit by August 1, 1979. The defendants refused to vacate the premises, and on August 1, 1979, the defendants were served with a writ of summons. A hearing was then held before the Plaistow District Court (*Chase*, J.) and resulted in a judgment for possession with a writ of possession to issue on October 15, 1979, if the defendants paid $300 to the plaintiff by September 15, 1979; otherwise, the writ of possession would issue forthwith. A writ of possession issued on December 5, 1979, bearing the typewritten name of *Andernacht*, J.

Pursuant to the writ of possession, the plaintiff evicted the defendants on December 6, 1979. The plaintiff arranged to have the defendants' household furnishings moved and stored, and to have the defendants' household pets moved to a kennel. The plaintiff has paid all of the storage expenses.

The plaintiff filed a petition for declaratory judgment in the Rockingham County Superior Court on February 5, 1980, requesting the court to declare which party was liable for the moving and storage expenses and the kennel charges. After a hearing on August 7, 1980, the Court (*Contas,* J.) ordered that the defendants reimburse the plaintiff for those costs or, in the alternative, that the items be sold at "public auction." From this decree, the defendants appealed.

The defendants argue that the plaintiff used unreasonable force to dispossess them from their former residence. The trial court, however, expressly found that the plaintiff used reasonable force to dispossess the defendants and used reasonable means to protect the defendants' property. *Weeks v. Sly,* 61 N.H. 89, 90 (1881); *Whitney v. Swett,* 22 N.H. 10, 14 (1850). The defendants concede this, but argue that the force employed was *per se* unreasonable because the writ of possession relied upon by the plaintiff was void *ab initio,* rendering the plaintiff a mere trespasser. Specifically, the defendants contend that because Judge Andernacht was a justice of the Plaistow District Court, and the judge's law firm, Andernacht, Fleming & Hurd, represented the plaintiff in the eviction proceedings, RSA 502-A:21 disqualified Judge Andernacht from acting upon the plaintiff's writ of possession. Consequently, they argue that the judge lacked jurisdiction and that the writ of possession was void *ab initio.* We disagree.

 "It is the right of every citizen to be tried by judges as impartial as the lot of humanity will admit." N.H. CONST. pt. 1, art. 35. A *per se* rule of disqualification due to the probability of unfairness, "applies when the trier has pecuniary interests in the outcome," when the trier has become personally embroiled in criticism from a party before him, or when he has heard evidence in secret at a prior proceeding, or when he is related to a party." *State v. Aubert,* 118 N.H. 739, 741, 393 A.2d 567, 568 (1978) (citations omitted). A part-time judge must exercise particular care to keep the conduct of his law practice separate from his judicial functions so that improprieties and the appearance of impropriety may be avoided. *In re Mussman,* 113 N.H. 54, 55, 302 A.2d 822, 823 (1973). Accordingly, RSA 502-A:21 forbids any justice of the district court from representing any person in a matter pending or previously examined in his court. Likewise, no attorney associated with a district court justice in the practice of law may appear before that court. *Id.*

██ ██ While the statute was violated in this case, on the facts of the case we hold that the writ of possession was not void. The

summary process hearing was held by *Chase*, J. of the Epping Municipal Court, who was sitting by special assignment. *But see* RSA 502-A:5 (Supp. 1979). The plaintiff was represented in that hearing by Romprey, Beaumont & Mason and the defendants were represented by Attorney Thomas S. Alison. The court rendered judgment in favor of the plaintiff and ordered a writ of possession to issue. Later, an attorney from Judge Andernacht's firm obtained a writ of possession. The writ was signed by the clerk, and although it bore the *typewritten* name of Judge Andernacht, it is clear that the writ issued pursuant to the order of Judge Chase and not due to any proceedings involving Judge Andernacht. Thus, not only was Judge Andernacht not involved in this case, no justice of his court was involved. Furthermore, Judge Andernacht's law firm did not represent the plaintiff at the hearing on the merits.

While the circumstances of this case do not require the invalidation of the plaintiff's writ of execution, we do not condone what has occurred. RSA 502-A:21 is clear that no attorney associated with a justice of the district court in the practice of law shall appear before the judge's court. The appearance of an attorney from Judge Andernacht's law firm in a case before the Plaistow District Court clearly violated that statute and must be avoided in the future so as to avoid even the appearance of impropriety. *Id.*

■ The defendants next argue that the plaintiff used unreasonable force to evict them from their former residence. They argue that, because the plaintiff refused to subordinate its interest in the house to that of a third-party financer, they were unable to obtain refinancing and failed to redeem their property within the statutory period. The defendants cite no authority imposing a duty upon a judgment creditor who purchases at his own sheriff's sale to subordinate his position to that of a third party in order to assist the judgment debtor to redeem his property. We are unpersuaded that a judgment creditor has such a duty, and we reject this argument.

■ The defendants next argue that the plaintiff was estopped from asserting a claim against them for the moving, storage, and kennel expenses because the plaintiff's agent told them that the plaintiff would pay all such charges. The trial court was aware of the defendants' allegations on this matter but, after hearing the testimony, the court awarded judgment for the plaintiff. Although the court made no express finding on the issue, it impliedly rejected the defendants' estoppel theory by rendering judgment for the plaintiff. *See Saucier v. Saucier*, 121 N.H. 330, 332, 430 A.2d 131, 132 (1981); *State v. McCarthy*, 117 N.H. 799, 801, 379 A.2d

1251, 1252 (1977). A review of the transcript discloses no grounds for overturning that judgment.

Finally, the defendants argue that by failing to negotiate with prospective purchasers of the house, the plaintiff breached its duty to minimize its damages. Specifically, they assert that the plaintiff's failure to entertain offers for the purchase of the house between December 1979 and August 1980 caused the storage charges to increase unnecessarily. The defendants apparently assume that the sale of their former residence would have brought a sum sufficient to satisfy all of the plaintiff's claims against it, to pay the outstanding mortgages and liens against the property, and to pay all of the accrued storage charges.

The defendants' argument presupposes an obligation on the plaintiff to sell the residence in order to pay the storage expenses. We hold that the plaintiff had no such obligation. Pursuant to the sheriff's sale, the plaintiff acquired all the "right, title, and interest that the [defendants] had in [the] estate, . . . subject to the debtor's right of redemption." RSA 529:28. The defendants' failure to redeem the property extinguished their interest in the property. Consequently, the plaintiff became the owner of the fee subject only to prior encumbrances. *Id.* The plaintiff owed no duty to the defendants to sell the property.

For the reasons herein stated, the judgment of the trial court is affirmed.

*Affirmed.*

BATCHELDER, J., did not sit; the others concurred.