Strafford
No. 81-229

THE STATE OF NEW HAMPSHIRE

v.

ROBERT FENNELLY

June 9, 1983

380

*Gregory H. Smith*, attorney general (*Paul Barbadoro*, assistant attorney general, on the brief and orally), for the State.

*Shaheen, Cappiello, Stein & Gordon*, of Concord (*Steven M. Gordon* and *Robert A. Stein* on the brief, and *Mr. Stein* orally), for the defendant.

BROCK, J. The defendant, Robert Fennelly, was charged with receiving stolen property in violation of RSA 637:7. After a jury trial in Superior Court (*Goode*, J.), the defendant was convicted and sentenced. The defendant has appealed, alleging the commission of a multitude of errors by the trial judge. For the reasons which follow, we affirm the defendant's conviction, but remand for resentencing.

The theme underlying most of the defendant's arguments on this appeal is that the trial judge was biased against him and denied him

his right to a fair trial. The defendant questions numerous rulings made by the trial judge prior to and during his trial, as well as the judge's general conduct of the trial and the sentencing hearing.

The defendant's first claim is that the trial judge erred when he denied the defendant's motion that he recuse himself. In the motion, the defendant stated that a number of years earlier, when he was a member of the New Hampshire Senate Judiciary Committee, he had participated in a special meeting called to discuss and vote on the qualifications of the trial judge prior to his appointment to the bench. The defendant asserted that he had voted on the record at that time against the trial judge's confirmation. At the hearing on the motion, counsel for the defendant stated that the defendant had also taken a "public position" against the nomination of the trial judge.

However, the defendant presented no documentary or other evidence supporting these allegations. The only evidence in the record even remotely connected with the defendant's role in any aspect of any judicial appointment is a document produced by the State, showing that the defendant was present at a meeting on April 29, 1975, during which the Senate Judiciary Committee briefly discussed a proposed bill to establish a judicial selection commission, whose duty it would be to recommend three candidates to the Governor and Executive Council whenever a judicial appointment was to be made. This document does not show the defendant as having made any statements whatsoever, nor does it reveal whether a vote of any kind was actually taken. No evidence in the form of newspaper clippings or any other public materials was presented to support the defendant's claim that his opposition to the trial judge's appointment was a matter of public knowledge.

In contrast, during the hearing on the motion, the trial judge stated that he had never seen the defendant before that time, was unaware of any role the defendant might have played in any judiciary committee meeting, and had no bias against him.

The defendant does not dispute that he *could not*, in fact, have had any formal role in the confirmation of the trial judge's appointment to the bench, since judicial appointments are not within the control of the legislative branch in this State. *Opinion of the Justices*, 117 N.H. 398, 401, 374 A.2d 638, 639 (1977); *see* N.H. CONST. pt. II, art. 46 and pt. I, art. 37.

██ The defendant nonetheless insists that the trial judge should have recused himself, despite the defendant's failure to provide any factual basis for the allegation of bias. It is well settled in this State that

"[a] *per se* rule of disqualification due to the probability of unfairness, 'applies when the trier [of fact] has pecuniary interests in the outcome,' when the trier [of fact] has become personally embroiled in criticism from a party before him, or when he has heard evidence in secret at a prior proceeding, or when he is related to a party."

*Plaistow Bank & Trust Co. v. Webster*, 121 N.H. 751, 754, 433 A.2d 1332, 1334 (1981) (citation omitted). The defendant's failure to present any evidence that the trial judge had "become personally embroiled in criticism" from the defendant, coupled with the trial judge's statement that he had no knowledge of the defendant or his activities, clearly preclude application of the *per se* disqualification rule in the present case. In addition, the defendant simply failed to present any facts "from which a sane and reasonable mind might fairly infer personal bias or prejudice on the part of the judge." *Bricker v. Sceva Speare Hosp.*, 114 N.H. 229, 233, 317 A.2d 563, 566 (1974) (quoting *Hurd v. Letts*, 152 F.2d 121, 122 (D.C. Cir. 1945)).

■■ Whether the issue of the propriety of recusal is discussed in terms of a *"per se"* rule or of a "reasonableness" standard, the defendant must show the existence of "bias, or such likelihood of bias, or an appearance of bias that the judge is unable to hold the balance between vindicating the interests of the court and the interests of the accused." *State v. Linsky*, 117 N.H. 866, 882, 379 A.2d 813, 823–24 (1977) (citing *Ungar v. Sarafite*, 376 U.S. 575, 588 (1964)). Because the defendant failed to make any such showing, we hold that the trial judge committed no error when he denied the defendant's motion to recuse.

■ The defendant argues further, however, that the trial judge's rulings on certain motions both prior to and during the trial and at the time of sentencing, as well as his general conduct of the trial, reveal that he was *in fact* biased against the defendant. The defendant therefore claims that his right to a fair trial was violated. He also argues that each of these disputed rulings constitutes an independent ground for reversal on appeal. We will deal with each of the defendant's claims separately, but state as a preliminary matter that our review of the almost 1,200 pages of trial transcript and our consideration of the conduct and rulings of the trial judge reveal a fair, even-handed and impartial treatment of the defendant. "Considering the record as a whole, we cannot say that the presumption of our trial judges' honesty and integrity has been overcome or that there was any bias that influenced the decision in the case." *State v. Aubert*, 118 N.H. 739, 742, 393 A.2d 567, 569 (1978).

The defendant argues initially that the trial court erred in denying his pre-trial motion for a bill of particulars. He claimed in that motion that the indictments were vague and insufficiently detailed in four principal respects and that, as a result, he would be unable adequately to prepare his case, would be subject to prejudicial surprise at trial, and would be insufficiently protected by the indictments for double jeopardy purposes. On appeal, the defendant claims that the indictments insufficiently described the *particular* items of stolen property he was alleged to have received. In addition to claiming that denial of his motion constituted reversible error, the defendant argues that the denial is evidence of the trial judge's bias against him.

The two indictments in question read:

"[T]hat ROBERT FENNELLY of Dover in the County of Strafford aforesaid on or about the 17th day of July in the year of our Lord one thousand nine hundred and eighty at Dover in the County of Strafford aforesaid, with force and arms, being a dealer in gold and silver did, at Bill and Bob's, A Sterling Example, in Dover, New Hampshire, receive from Todd A. Hanson certain stolen property belonging to Leonard Goldman of Kennebunkport, Maine, to wit; assorted items of gold and silver of a value in excess of $1,000.00, for which said Robert Fennelly paid Todd A. Hanson $1,100.29, believing that said items had probably been stolen, with a purpose to deprive the owner thereof . . ."

"[T]hat ROBERT FENNELLY of Dover in the County of Stafford on or about the twenty-ninth day of July in the year of our Lord one thousand nine hundred and eighty at Dover in the County of Strafford aforesaid, with force and arms, being a dealer in gold and silver did, at Bill and Bob's, A Sterling Example, in Dover, New Hampshire, receive from Todd A. Hanson certain stolen property belonging to Raymond Goss and Jeanne Jacobsen of Cape Neddick, Maine, to wit: assorted items of gold and silver of a value in excess of one thousand dollars ($1,000) for which Robert Fennelly paid Todd A. Hanson approximately nine hundred dollars ($900), believing that said items had probably been stolen, with a purpose to deprive the owner thereof . . ."

These indictments clearly set forth the elements of the offenses for which the defendant was charged, the exact location at

which he was alleged to have received the stolen goods, the party from whom he received them, the homes from which the goods were stolen, the amount of money paid by the defendant for them and a generic description of the goods themselves. We are also mindful of the fact that the State cooperated fully with the defendant in making extensive pre-trial discovery through which the defendant obtained lists of the items taken during the burglaries in question, statements from the burglars who later sold the items to the defendant, and other extensive information. We have held previously that:

> "Whether an indictment is sufficient depends on whether 'it gives the defendant enough information so that he can prepare for trial' . . . by setting forth 'all of the necessary elements constituting the offense,' and enables the defendant to 'plead his conviction or acquittal as a bar to further prosecution for the same offense. . . .'"

*State v. Taylor*, 121 N.H. 489, 495, 431 A.2d 775, 778 (1981) (citations omitted). We conclude that the State was not required to list in the indictments the specific items the defendant received, particularly in light of the fact that the defendant was entitled to and did participate in extensive pre-trial discovery, and considering the fact that, as the State has explained, the stolen items had long since left the defendant's possession and could not be recovered and individually identified. The trial judge did not err in denying the defendant's motion for a bill of particulars.

> "Every fact the State intends to prove, however, does not have to be pleaded in the information. The test is not whether the information could be more comprehensive and certain. To the contrary, the information need contain only the elements of the offense and enough facts to warn the accused of the specific charges against him."

*State v. Manchester News Co.*, 118 N.H. 255, 257, 387 A.2d 324, 327, *appeal dismissed*, 439 U.S. 949 (1978).

The defendant next argues that the trial court erred in allowing the State, during trial, to amend each of the two indictments on which the defendant was being tried. During the presentation of its case to the jury, the State requested leave of the court to amend the indictment for receiving the Goldman property by inserting the word "Mrs." in front of the name "Leonard Goldman." At the close of the defendant's presentation of evidence, the State requested that the name of "Raymond Goss" be stricken from the second indictment, leaving the name of "Jeanne Jacobsen" as the sole owner of the stolen property.

The defendant excepted to both amendments and argues strenuously on appeal that they were amendments of substance because they involved a change in the stated ownership of the stolen property. The defendant relies on the case of *State v. Lyon*, 47 N.H. 416 (1867), in which this court held that "the name of the owner of the goods is [a] matter of substance in an indictment for larceny, and therefore cannot be amended." *Id.* at 418.

■ It is well settled that "[a]mendment is not allowed . . . when the circumstances of the case are such that a change must be regarded as a matter of substance, as effecting a change in the offense charged, or as adding an offense." *State v. Spade*, 118 N.H. 186, 189, 385 A.2d 115, 116 (1978). However, it has been accurately stated that:

> "The parts of a complaint which are considered part of the substance of a complaint or indictment have narrowed, as the Court has disregarded more and more of the technical rules concerning indictments in the last fifty years. In general, any allegation which constitutes an element of the offense must be considered part of the substance of the indictment. . . ."

*See* R. McNAMARA, 1 NEW HAMPSHIRE PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 474 (1980) (footnotes omitted).

In numerous cases since *Lyon* in 1867, this court has held that the inquiry concerning what will or will not be considered substance in an indictment or complaint focuses on the defined elements of the offense rather than on technical rules of the common law. Indeed, as long ago as 1929, this court in a much-cited opinion emphatically declined to adhere strictly to "[t]he Anglo-Saxon idea of an indictment [which] came from the technical rules of pleading in civil actions adopted centuries ago." *State v. Rousten*, 84 N.H. 140, 142, 146 A. 870, 872 (1929). In that case, we sustained a conviction for larceny of electricity, where the underlying indictment named a person to whom the electricity was delivered and the proof at trial showed it had in fact been supplied to a corporation. We held that the identity of the party in question was not a necessary element of the offense and was therefore "immaterial." *Id.*, 146 A. at 871; *see State v. Dinagan*, 79 N.H. 7, 9–10, 104 A. 33, 34 (1918).

Our statute, RSA 601:8, providing for the amendment of indictments states that:

> "No indictment, complaint, return, process, judgment or other proceeding, in any criminal case in the courts or course of justice, shall be abated, quashed or reversed for

any error or mistake where the person or case may be rightly understood by the court, nor through any defect or want of form or addition; and courts and justices may, on motion, order amendments in any such case."

Courts in many states with amendment statutes similar to our own have generally permitted the substitution or addition of "a different person as the owner of property alleged to have been stolen or injured, or which was the subject of the offense charged. . . ." Annot., 14 A.L.R.3d 1358, 1395–96 (1967).

 We therefore do not agree that the law in this State is or should be a strict rule that all amendments of names alleging ownership of property *must* be considered matters of substance. In this case, whether the stolen property which was taken from the home of a married couple on one specified occasion by named burglars and sold to the defendant on a certain date actually belonged to the wife or to the husband can in no way be viewed as a material element of the offense charged. Similarly, whether the property involved in the second indictment, taken from the home of an unmarried couple on one specified occasion by named burglars and sold to the defendant on a certain date, actually belonged to both of the partners or only one is equally unimportant. The only question of importance with respect to the ownership of the property in the present case was whether the property received by the defendant was indeed the "property of another," a question which was not in dispute and which counsel had an ample opportunity to explore at trial.

 It is certainly possible that in some cases a change in the name or identity of the owner of property would be considered a matter of substance relating significantly to some element of the offense. It is also clear that in some cases, the amendment of an indictment, even if not affecting a matter of substance, would still be found to prejudice the defendant and would not be allowed. In this case, however, we have reviewed the record and find that the defendant has failed to show any real prejudice resulting from the amendments, either in his ability to understand properly the charges against him or in his ability to prepare his defense.

 The defendant has argued that the indictments as amended inadequately protect him for double jeopardy purposes from future prosecution for the receipt of goods belonging to either Mr. Goldman or Mr. Goss. We disagree. The indictments and the trial record constitute a bar to the defendant's being put on trial again for receiving property stolen from either the Goldman or Goss-Jacobsen resi-

dences, on the dates specified, in the New Hampshire location specified, for the amount specified and from the person specified. In addition, as discussed previously, since the *specific* items sold to the defendant on those occasions were not individually ascertainable, as they left the defendant's possession almost immediately, there can be no danger that the defendant will be indicted for receiving specific items *known* to belong to either Mr. Goldman or Mr. Goss on those specific dates from Todd Hanson in the Dover store.

 The defendant next argues that the trial court committed reversible error in its charge to the jury on circumstantial evidence. While counsel for the defendant exhaustively objected to many aspects of the trial court's instructions to the jury, counsel failed to make the specific objections to the charge on circumstantial evidence which he now argues on appeal. While those objections are deemed waived, *State v. Niquette*, 122 N.H. 870, 873, 451 A.2d 1292, 1294 (1982), we would nonetheless point out that the defendant's objections are wholly lacking in merit. The circumstantial evidence instruction given by the court neither was too lengthy nor unduly emphasized the role of circumstantial evidence, nor did it inaccurately convey the law to the jury.

The defendant next argues that the trial court erred in refusing to instruct the jury, precisely as requested by the defendant, that the testimony given by the two admitted burglars should be received with "great caution" because they might have been lying in order to obtain lenient treatment by the State. The court gave an accurate charge on witness credibility with pertinent parts as follows:

> "In weighing the evidence you may of course consider a number of things. For example, the intelligence of the witnesses who have testified before you; their means of acquiring the information which they have given to you; the reliability of their memories; their motives to misrepresent, if any; their appearance on the witness stand; the probability of their statements and the consistency of what they have indicated to you. . . .

> You are not bound to accept the testimony given by any witness merely because they are under oath. Simply because someone says so doesn't necessarily make it so. You are required, however, to give the testimony of each witness only such worth as you find that it merits. If you find any testimony from any witness to be inherently improbable under the circumstances, you are free to reject that testimony in its entirety. In short, members of the jury, you may accept all of a person's testimony, you

> may accept part of it, or you may elect to accept none of it, as you in your sole discretion deem appropriate."

The defendant argues that this charge inadequately instructed the jury on the defense theory that the witnesses should not be believed because they were lying in order to obtain favorable treatment by the State. The defendant relies on the decision in *United States v. Partin*, 493 F.2d 750 (1974), *cert. denied*, 434 U.S. 903 (1977), a case in which the trial court, stating that it wished to "test" how an opinion held by the court would fare on appeal, refused to give *any* instruction whatsoever on witness credibility in its formal jury charge. 493 F.2d at 761. This case is obviously to be distinguished from the one at hand, where the jury's attention was specifically directed to the credibility and motivation of the witnesses.

■■ The fact that counsel for the defendant has chosen to characterize the credibility of certain witnesses in this case as a "theory of defense" does not convince us that he was entitled to a more detailed instruction. We conclude that the trial court's instruction to the jury was more than adequate and observe that the defendant availed himself of every opportunity in calling his own witnesses, in cross-examining the State's witnesses, and in closing argument, to present his specific claims and theories regarding motive and credibility to the jury. We have held continually that "if the trial court's charge to the jury adequately states the relevant law and standards to be followed by the jury 'the court has no obligation to use specific language requested by a party. . . .'" *State v. Taylor*, 121 N.H. at 495–96, 431 A.2d at 779 (citations omitted); *see State v. Glidden*, 122 N.H. 41, 49, 441 A.2d 728, 732 (1982). The trial judge was not required to issue what would have been advisory comments on the evidence before him. "The judge was not required to speculate about the possibility that . . . [the witness] may have testified under a promise of immunity." *United States v. Salazar*, 485 F.2d 1272, 1279 (2d Cir. 1973), *cert. denied*, 415 U.S. 985 (1974).

■ The defendant also claims that the trial judge should have given an instruction regarding accomplice credibility in testifying. Suffice it to say that this request is made for the first time on appeal and cannot now be argued. *State v. Niquette*, 122 N.H. at 873, 451 A.2d at 1294.

■ The defendant next argues that the trial judge committed reversible error in his final words to the jury in which he encouraged the jury to attempt to reach a verdict in the case. The trial judge stated:

"Now, remember, members of the jury, each of these indictments is to be handled by you separately and independently of one another. You may return verdicts of guilty on both indictments, you may return verdicts of not guilty on both indictments, you may return a verdict of guilty on one indictment and not guilty on the other, or not guilty on the first and guilty on the other. The thing I hope you don't do is to come in here and tell me that you can't reach a decision on this case. If this case has to be tried over again, the next jury will not be any more intelligent than you are, the evidence will not be any better, so it's important that you consider all the evidence carefully and reach some conclusion, whatever that conclusion is."

The defendant claims that the judge's comment amounts to a mini "Allen" charge. *See generally Allen v. United States*, 164 U.S. 492, 501–02 (1896); *cf. State v. Niquette*, 122 N.H. at 873–74, 451 A.2d at 1293–94. It is sufficient for us to state that the comments made by the trial judge to the jury, and the context in which they were made, were so far from being akin to an "Allen" charge that we consider this claim to be wholly lacking in merit.

The defendant also claims that the court wrongfully allowed the State to introduce evidence regarding the sale of stolen property at the defendant's store in Dover, without first requiring the State to establish the defendant's presence in the store. A review of the record, however, indicates that the State not only laid an appropriate foundation for the admission of this testimony, but also offered direct testimony that the defendant was present in the store and participated in transactions with the burglar.

The defendant argues further that the trial court wrongly allowed the State to introduce evidence involving some transactions in the State of Maine. The testimony regarding certain transactions in Maine was admissible because, as evidence of a common scheme or plan, it could be considered probative of the defendant's mental state. *See State v. Freije*, 109 N.H. 290, 291, 249 A.2d 683, 684 (1969).

The defendant has argued that the statute under which he was convicted, RSA 637:7, is unconstitutionally vague and that the mental element it entails conflicts with the culpable states of mind described in RSA 626:2. Specifically, RSA 637:7, I provides that "[a] person commits theft if he receives, retains, or disposes of the property of another knowing that it has been stolen, or believing that it has probably been stolen, with a purpose to deprive the owner there-

of." The defendant maintains that the mental element of "believing that it has probably been stolen" conflicts with RSA 626:2, I, which provides that "[a] person is guilty of . . . a felony . . . only if he acts purposely, knowingly, recklessly or negligently, as the law may require, with respect to each material element of the offense." We disagree.

The defendant claims that "believing" the property "has probably been stolen" subjects him to an undefined and/or lesser standard of culpability than that entailed by purposeful, knowing, reckless or negligent behavior. We find to the contrary, that the "belief" standard in the statute is nothing more than a specific description of a "knowing" mental state. To paraphrase the language of RSA 626:2, II(b), a person acts knowingly with respect to a circumstance that is a material element of an offense *when he is aware that such a circumstance exists.* In this case, for a defendant to *believe* that goods have probably been stolen is but another and, if anything, stronger way of stating that he is *aware* that such goods have probably been stolen. The defendant cannot complain that the statute entails an insufficient level of, or definition of, criminal culpability. *See State v. Chaisson,* 123 N.H. 17, 26, 458 A.2d 95, 100 (1983).

The defendant claims, as an additional matter, that our decision in *State v. Elbert,* 121 N.H. 43, 424 A.2d 1147 (1981) was wrongly decided and that his constitutional guarantee of a jury of his peers was violated. The defendant has not advanced a single argument supporting his claim, and we are not inclined to overrule *Elbert.*

The preceding arguments advanced by the defendant either were all argued as separate motions prior to or during the trial, or constituted objections and exceptions to various rulings made by the court during the course of the trial. As stated previously, the defendant argued that each of these claims constituted an independent ground for reversal of his conviction, as well as *cumulatively* showing a pattern of prejudice or bias against him on the part of the trial judge. As we have stated in each case, the trial judge committed no error in his treatment of these matters and we reiterate that the defendant has wholly failed to show any bias or prejudice against him.

The defendant argues as a final matter that the trial court failed to comply with the requirements of RSA 651:4, I (Supp. 1981), when it ordered the probation department not to make a sentencing recommendation. RSA 651:4, I (Supp. 1981) reads in relevant part:

"No person convicted of a felony shall be sentenced before

a written report of a presentence investigation has been presented to and considered by the court, unless waived by defendant and the state. . . . *The report shall include a recommendation as to disposition, together with reference to such material disclosed by the investigation as supports such recommendation.*"

(Emphasis added.)

 We agree with the defendant that absent his and the State's consent or waiver, the trial court should not have ordered the probation department to omit its sentencing recommendation. The defendant and the State were entitled by statute to have the judge receive, and consider, the recommendation. Accordingly, we remand for compliance with RSA 651:4, I (Supp. 1981) and resentencing.

> *Conviction affirmed; sentence vacated; remanded.*

BOIS, J., concurred; DOUGLAS and BATCHELDER, JJ., concurred specially; KING, C.J., dissented.

DOUGLAS, J., concurring specially, with whom BATCHELDER, J., concurs: The New Hampshire Constitution requires that cases be heard by judges "as impartial as the lot of humanity will admit." N.H. CONST. pt. I, art. 35. Canon 2 of the New Hampshire Code of Judicial Conduct requires a judge to "avoid" the "appearance of impropriety," and Canon 3 directs a judge to disqualify himself or herself in any proceeding "in which his [or her] impartiality might reasonably be questioned." N.H. SUP. CT. R. 38, Canon 3 C(1) (Code of Judicial Conduct). If presented with a motion for recusal, I think judges should go to the outer limit of ensuring not only that justice *is* done, but also that it *appears* to be done.

In the case at hand, the motion to recuse was not in affidavit form as required by Superior Court Rule 57 when the motion is "grounded upon facts." Furthermore, no testimony or newspaper clippings were introduced into evidence to support the defendant's bare allegations that the trial judge was prejudiced against him. The trial judge said he knew nothing about the defendant's purported opposition to his appointment to the superior court bench, or about any "rump session" of the Senate Judiciary Committee held after the Executive Council confirmed the judge's nomination, for the purpose of criticizing his lack of trial experience.

On this status of the record, I cannot find an error of law sufficient to reverse the defendant's conviction, and I therefore concur that the conviction should be affirmed.

KING, C.J., dissenting: The majority holds that the admission of evidence of other transactions in Maine, which constituted separate crimes there, was not erroneous because the transactions were evidence of a common scheme and were probative of the defendant's mental state. While I agree that evidence of other transactions which constituted crimes in Maine was admissible to show the defendant's mental state, *State v. Garceau*, 108 N.H. 209, 212, 231 A.2d 625, 628 (1967), it was inadmissible to show the character of the defendant. *State v. Barker*, 117 N.H. 543, 546, 374 A.2d 1179, 1180 (1977). Because it was admissible only for a limited purpose, the admission of the evidence should have been accompanied by specific instructions to the jury limiting its consideration to the narrow purpose for which it was admitted. *Id.*, 374 A.2d at 1180; *see People v. Castronova*, 44 A.D.2d 765, 765, 354 N.Y.S.2d 250, 251–52 (1974). The court's failure to so instruct the jury at the time of the admission of the evidence and its refusal to give a requested jury instruction on this issue were erroneous.

Additionally, I would remand this case for resentencing by a different judge. The judge's order that the probation department not make a sentencing recommendation indicates that the court was unwilling to consider the recommendation. In order to insure that the probation department's recommendation is given its proper consideration, the case should be remanded for resentencing by a different judge.

Resentencing by a different judge should be required because of the hostility displayed by the court throughout the sentencing process. The court questioned the propriety of the defendant's submitting letters written by the Governor and two Executive Council members regarding the defendant's character and service to the community. The court suggested that the defendant and his counsel were attempting to exert "the extensive political pressures of the Governor and Executive Council Members" on the court in disposing of the case. Reference letters are routinely submitted in criminal cases before sentencing. It is not improper for a defendant to solicit letters from politicians, public officials, clergy or anyone who could offer testimony of the defendant's public service.

The court also displayed some hostility to the defendant and his counsel when it refused to continue sentencing to permit a psychologist to testify on behalf of the defendant prior to sentencing. While this incident alone would not require resentencing by a different judge, when considered in the framework of the two incidents discussed above, such a procedure is necessary.