Rockingham
No. 86-509

THE STATE OF NEW HAMPSHIRE

v.

ANN ERICKSON

July 22, 1987

*Stephen E. Merrill*, attorney general (*Bradford W. Kuster*, assistant attorney general, on the brief, and *T. David Plourde*, assistant attorney general, orally), for the State.

*James E. Duggan*, appellate defender, of Concord, by brief and orally, for the defendant.

JOHNSON, J. The defendant was convicted by a jury in the Superior Court (*Dunn*, J.) on two indictments of theft by deception. Her appeal raises the following question for our review: whether the trial court impermissibly amended an indictment which charged the defendant with a "purpose to deprive by withholding the property permanently," by instructing the jury that "purpose to deprive" included "withhold[ing] [the] property permanently *or* for so extended a period or to use under such circumstances that a substantial portion of its economic value or of the use and benefit

thereof would be lost." (Emphasis added.) We reverse the defendant's conviction and remand for a new trial.

In January, 1984, the defendant entered into an agreement to purchase Sinbad Travel, Inc., located in Burlington, Massachusetts, from one Fred Delatori, for $20,000 in a two-year buy-out plan consisting of four installments of $5,000. After assuming the business, she ran into financial difficulty, allegedly due to transgressions of the seller. In mid-May, 1984, she changed the name of her business to Burlington Travel Center.

On May 31, 1984, the defendant opened a business checking account for Burlington Travel at Commercial Bank and Trust in Lowell, Massachusetts, naming herself as the authorized signatory. With the exception of one deposit in July, the defendant made no deposits into this account from July, 1984, through September, 1984.

On August 16, 1984, the defendant opened a personal checking account at Seabrook Bank and Trust, with the deposit of two checks drawn by the defendant on her business account at the Commercial Bank and Trust. One check was for $865 and the other for $4,685. At the time she deposited these checks she received $3,000 in cash. On August 22, 1984, the defendant returned to Seabrook Bank and Trust with a check drawn on the Commercial Bank and Trust account payable to herself in the amount of $2,870, depositing $500 and receiving $2,370 back in cash. All three of these checks deposited in the Seabrook Bank and Trust account were returned by Commercial Bank and Trust for insufficient funds.

On August 30, 1984, the Seabrook Bank and Trust Company sent the defendant a "ten-day letter," requesting that she make the payments good within ten days, and on September 11, since the bank had received no payment, James St. Onge of Seabrook Bank and Trust visited the defendant's business to discuss the problem. The defendant indicated at that time that she had expected to cover the checks with funds owing to her from a corporate client, as well as a loan from her brother. The bank then agreed to give the defendant additional time to obtain the money owed to her account.

After the defendant made numerous "last ditch" efforts to obtain the money, all of which were futile, the Seabrook Bank and Trust entered a complaint with the Seabrook Police Department on October 1, 1984. After her arrest, the defendant agreed to make restitution, and on November 7, 1984, she entered into an agreement with the Seabrook Bank and Trust Company to pay $1,000 in advance and the remaining balance in sixty days. Upon receiving no further payments, the bank advised the defendant on

January 7, 1985, that the deadline had passed. The matter was subsequently referred back to the Seabrook Police Department.

The defendant was indicted for theft by deception in violation of RSA 637:4, an essential element of which is a "purpose to deprive," defined in RSA 637:2, III as possessing the conscious object

"(a) To withhold property permanently or for so extended a period or to use under such circumstances that a substantial portion of its economic value, or of the use and benefit thereof, would be lost;

(b) to restore the property only upon payment of a reward or other compensation; or

(c) to dispose of the property under circumstances that make it unlikely that the owner will recover it."

Although the grand jury was only statutorily required to allege a "purpose to deprive" on the part of the defendant, the indictment itself went further, charging that the defendant acted "with the purpose to deprive the said bank [of its property] by withholding the property permanently." The indictment did not go on to state the other two variants contained in RSA 637:2, III(a). Nevertheless, in its charge to the jury, the trial court stated:

"In order to prove that the defendant acted with the purpose to deprive the owner thereof at the time she obtained this property, the State must prove beyond a reasonable doubt that the defendant had the conscious object to withhold this property permanently *or for so extended a period or to use under such circumstances that a substantial portion of its economic value or of the use and benefit thereof would be lost.*"

(Emphasis added.) Thus, the trial court included in its charge statutory variants of the mental state of "purpose to deprive" that were not included in the indictment of the grand jury. For the reasons which follow, we hold that this constituted a material constructive amendment of the indictment, thereby entitling defendant to a new trial.

■■ The citizens of this State have the right to indictment by a grand jury before they may be tried for any offense punishable by imprisonment for more than one year. RSA 601:1; N.H. CONST. pt. I, art. 15. In *State v. Bean*, 117 N.H. 185, 188, 371 A.2d 1152, 1153–54 (1977), this court held that this provision should be considered in conjunction with part I, article 15 of the New Hampshire Constitution, which provides that "[n]o subject shall be

held to answer for any crime, or offense, until the same is fully and plainly, substantially and formally, described to him . . . ." One essential facet of this right is that a criminal defendant has a right to rely upon the information contained in an indictment in preparing his defense, and "a court cannot permit a defendant to be tried on charges that are not made in the indictment against him." *Stirone v. United States*, 361 U.S. 212, 217 (1960).

In New Hampshire, the rule is well-developed that indictments brought on the oath of a grand jury cannot be freely amended. *State v. Donovan*, 128 N.H. 702, 705, 519 A.2d 252, 255 (1986). An indictment may be amended in form, but not in substance. *See* RSA 601:8; *State v. Spade*, 118 N.H. 186, 189, 385 A.2d 115, 116–17 (1978). In *State v. Cote*, 126 N.H. 514, 520–21, 493 A.2d 1170, 1174–75 (1985), this court held that in cases involving receipt of stolen property, an indictment need not allege any one of the variants of "purpose to deprive" specifically, and that the variants of the "purpose to deprive" mental state are not elements of the offense that must be specifically pleaded. The State argues that unless a constructive amendment of an indictment has the substantive impact of altering an element of the offense, the amendment is permissible. In the instant case, the State contends that the mental element at issue was unaltered by the instruction delineating statutory variants of the mental element in addition to the one charged in the indictment. We disagree.

It is true that an element of the offense is automatically considered part of the substance of an indictment. *State v. Bell*, 125 N.H. 425, 429, 480 A.2d 906, 909 (1984). It does not follow, however, that an allegation that is not part of the element of the offense, but has the effect of specifying and circumscribing the scope of the allegations, is *not* part of the indictment's substance so as to be immune to constructive amendment. The question we must ask in this case is whether the jury instruction constituted an amendment of the indictment that was prejudicial to the defendant "either in [her] ability to understand properly the charges against [her] or in [her] ability to prepare [her] defense." *State v. Fennelly*, 123 N.H. 378, 388, 461 A.2d 1090, 1095 (1983).

In this case, we cannot know whether the grand jury would have included in its indictment the other variants. The record makes clear, however, that the defendant's chief defense was that she did not intend to keep the money permanently, as specifically charged in the indictment. Nevertheless, because of the judge's charge, the petit jury may have convicted the defendant based upon

any of the additional factual mental states not alleged in the indictment. "If so, [she] was convicted on a charge the grand jury never made against [her]. This was fatal error." *Stirone*, 361 U.S. at 219.

The grand jury might have indicted the defendant with a general "purpose to deprive" allegation, but it did not do so. Although the RSA 637:2, III variants are not elements that *must* be alleged in the indictment, *State v. Cote, supra* at 521, 493 A.2d at 1175, once the grand jury chooses to allege one of the statutory variants specifically, the prosecutors, the judge, and the petit jury are bound by the allegation made in the indictment. *See Howard v. Daggett*, 526 F.2d 1388, 1390 (9th Cir. 1975).

As the Supreme Court noted in *Ex Parte Bain*, 121 U.S. 1, 10 (1887):

> "If it lies within the province of a court to change the charging part of an indictment to suit its own notions of what it ought to have been, or what the grand jury would probably have made it if their attention had been called to suggested changes, the great importance which the common law attaches to an indictment by a grand jury, as a prerequisite to a prisoner's trial for a crime . . . may be frittered away until its value is almost destroyed."

*Reversed and remanded.*

All concurred.