Sullivan
No. 87-010

THE STATE OF NEW HAMPSHIRE

v.

MILAN JOHNSON, JR.

July 8, 1988

*Stephen E. Merrill*, attorney general (*John S. Davis*, assistant attorney general, on the brief, and *Tina Schneider*, assistant attorney general, orally), for the State.

*Joanne Green*, assistant appellate defender, of Concord, by brief and orally, for the defendant.

THAYER, J. In this appeal from his conviction for aggravated felonious sexual assault, RSA 632-A:2, IV, the defendant, Milan Johnson, Jr., argues that: (1) the Trial Court (*Contas*, J.) erred in admitting evidence of prior sexual acts with his minor stepdaughter because it was not relevant to or probative of coercive behavior on the date specified in the bill of particulars; (2) the trial court's supplemental charge to the jury impermissibly amended the indictment; (3) the trial court failed to fully instruct the jury during the supplemental instruction by focusing only on the victim's state of mind and not the defendant's actions; and (4) the State failed to prove the required element of coercion beyond a reasonable doubt. We find no error and affirm.

All of the issues raised by the defendant which we consider on the merits rest on the supposition that when an indictment alleges an *express* threat on a specific date, he cannot be found guilty under RSA 632-A:2, IV on evidence and a jury charge of *implied* threats. Thus, to place the defendant's issues in proper context we will first construe the terms "coercion" and "threaten" as required by RSA 632-A:2, IV, which reads:

> "A person is guilty of a class A felony if he engages in sexual penetration with another person under any of the following circumstances:
>
> . . . .
>
> When the actor coerces the victim to submit by threatening to retaliate against the victim, or any other person, and the victim believes that the actor has the ability to execute these threats in the future."

Since neither the term "threat" nor the term "coercion" is defined in the statute, this court will use the words' common and approved meanings. RSA 21:2. "Coercion" is defined as being either "actual, direct or positive, as where physical force is used to compel act against one's will, or implied, legal or constructive, as where one party is constrained by subjugation to other to do what [her] free will would refuse." BLACK'S LAW DICTIONARY 234 (5th ed. 1979). "Threat" is defined as "any menace of such a nature and extent as to unsettle the mind of the person on whom it operates, and to take away from [her] acts that free and voluntary action which alone constitutes consent." *Id.* at 1327. Furthermore, a threat can be verbal or nonverbal, *i.e.*, "something that by its very nature or relation to another threatens the welfare of the latter . . . ." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2382 (1961).

In *State v. O'Flynn*, 126 N.H. 706, 496 A.2d 348 (1985), the defendant was indicted and convicted of an extortionate course of conduct. O'Flynn argued that the evidence was legally insufficient to establish that he threatened the deputies, although his deputies consistently testified that the defendant expressly and impliedly indicated that their job security was predicated upon contributions to his political campaign. In answer to the defendant's contention, we stated there that "[t]o be extortionate, a threat need not be express . . . [but] may be implied in words or conduct." *Id.* at 709, 496 A.2d at 351. Thus, by the plain meaning of the terms and by analogy to our construction of similar terms in the extortion

context, we hold that retaliatory threats, within the meaning of RSA 632-A:2, IV, are not required to be express.

Now we turn to the defendant's contention in his first argument that the trial court abused its discretion in allowing evidence of prior sexual acts between the defendant and the alleged victim. The defendant argues that the evidence of prior sexual acts and threats should be inadmissible because these prior acts were irrelevant to the date in question and prejudicial to the defendant.

Conversely, the State argues that the evidence was admissible to prove coercion because, though the defendant did not expressly state a threat to retaliate on the specified date, the coercion was due, rather, to an on-going course of conduct involving retaliatory acts.

The defendant filed a motion *in limine* to exclude at trial "any mention of alleged sexual activity between [the victim and himself] other than that which is stated in the indictment." The defendant contended that the prejudicial impact of the evidence of his unindicted sexual activities with the victim would outweigh its probative value and, also, that the evidence would constitute character evidence introduced to prove intent.

The motion was heard by DiClerico, J., at the hearing during which the State contended that it must be allowed to show the course of the relationship between the victim and her stepfather in order to prove its case. The State said, "The element of coercion that exists in this case did not occur specifically on September 13, 1985, but rather [was] the result of a long-term relationship . . . ." The State acknowledged that there was no express coercion on that date but argues that the coercion rather was "something [the victim] had learned over the course of a couple of years," and emphasized that unless the State could show this course of conduct, it could "not show the element of coercion." The State also pointed out that the court could limit prejudicial effects of the evidence by carefully instructing the jury.

The court denied the defendant's motion, finding that "evidence of coercion under some circumstances is the result of a prolonged series of events between two individuals," and that such evidence would be admissible to prove only "coercion by threatening" and the method of operation. The court ordered a pre-trial hearing pursuant to *State v. Barker*, 117 N.H. 543, 374 A.2d 1179 (1977) to determine if "the proof that the acts in question were committed by the defendant [was] clear, and [if] the probative value of the evidence outweigh[ed] the danger of prejudice . . . ."

A "Barker" hearing was held prior to the jury trial. The victim was the sole witness. She testified that the defendant began to "touch" her sexually when she was seven or eight years old. If she told him to desist, he would become angry. Though he never hit her, the victim testified that if she resisted she would get in trouble at home and "he wouldn't let [her] do things after [she] grew up . . . ." The victim further testified that at age eleven or twelve, the defendant began to have oral sex with her and made her reciprocate, and that when she started high school, the defendant began to have intercourse with her. According to her testimony, any rebuffs on her part were met.with anger and retaliatory behavior. She also testified that she felt coerced into having sexual intercourse on the day of the offense because she had a special school activity the next day and knew that if she did not do what the defendant expected she "wouldn't be able to [attend] and . . . [would] be grounded for the weekend. . . ."

Based on the victim's testimony, the Trial Judge (*Contas*, J.) ruled that "the State ha[d] proven by clear and convincing evidence that other alleged sexual activity between the defendant and the alleged victim [was] admissible to prove one of the elements of the offense charged, to wit, coercion by threatening and the method of operation used by the defendant in coercing the alleged victim." The court went on to find "that proof that the acts in question were committed by the defendant [was] clear and that the probative value of the evidence outweigh[ed] the danger of prejudice to the defendant."

At trial, the court instructed the jury prior to the victim's testimony that the "[e]vidence of other acts is not admissible to prove the character of a person in order to show that that person acted in conformity therewith." He further cautioned the jury that the "testimony will be introduced for the single purpose of showing what [the victm's] state of mind may have been on September 13, 1985 . . . . You may only consider this testimony when deciding if the state has proved the element of threat of retaliation or coercion by proof beyond a reasonable doubt." He also stated to the jury:

"[I]f you should find that there was prior sexual contact between . . . the defendant . . . and [the victim] in the past, you may not consider this in deciding if there was sexual contact at the time [in question]. Evidence of prior sexual acts between the defendant and the . . . victim may be considered by you only on the issue of whether and how any threats or elements of coercion occurred."

The victim then testified about the night in question. She repeated the substance of her pretrial testimony and added that on this night the defendant told her to get into his bed. When he found that she had not yet removed her nightgown, he "yelled" at her. The defendant then had intercourse with her. The victim also stated that, although the defendant did not expressly threaten her, she nonetheless felt there was a threat.

The use of coercion is an element of the charged offense. *See* RSA 632-A:2, IV. The prosecution must, therefore, present evidence of force or coercion in support of the charged crime. *See* RSA 625:10. Under New Hampshire Rule of Evidence 404(b) and our case law, evidence of similar acts is not admissible to show the defendant's character or propensity for crime, but is admissible to prove an element of the crime, a system of criminal activity, identity, motive, or the context in which a crime took place. *State v. Parker*, 127 N.H. 525, 532, 503 A.2d 809, 813 (1985); *State v. Avery*, 126 N.H. 208, 213, 490 A.2d 1350, 1354 (1985); *State v. Barker*, 117 N.H. at 546, 374 A.2d at 1180.

The trial court's "decision to admit evidence of a prior bad act will constitute an abuse of discretion only if 'clearly untenable or unreasonable to the prejudice of [the defendant's] case.'" *State v. Parker, supra* at 532, 503 A.2d at 813 (quoting *State v. Whitney*, 125 N.H. 636, 639, 484 A.2d 1158, 1160 (1984)); *State v. Allen*, 128 N.H. 390, 397, 514 A.2d 1263, 1268 (1986); *see State v. Hood*, 127 N.H. 478, 480, 503 A.2d 781, 783 (1985).

Here, the record shows that the trial judge carefully considered the evidence offered and specifically instructed the jury that the evidence was to be considered only on the ground of coercion and mode of operation in accordance with the directives of *State v. Smith*, 125 N.H. 522, 526, 484 A.2d 1091, 1094–95 (1984) and *Barker supra*. As such, we find no abuse of discretion.

The defendant's second argument is that the trial court's supplemental jury charge impermissibly amended the indictment. The indictment charged that on September 13, 1985, the defendant

"knowingly engaged in sexual penetration with [the victim] by coercing [her] to submit to sexual intercourse with [him], by threatening to retaliate against [her] by stating that he would not let her go out unless she had sexual intercourse with him and that if she caused any trouble, he would have her put in . . . 'reform school,' under

circumstances that [she] believed [he] had the present ability to execute those threats in the future. . . ."

Soon after jury deliberations began, the jury asked the court: "Did father have to state threat, or only imply it?" The court answered, "[The] victim has to realize that she is threatened, either stated or implied." The defendant objected to the answer. The defendant claims that this charge impermissibly broadened the indictment because the indictment specified that an overt threat was made on September 13th, and the bill of particulars limited the offense to that date. The State concedes that the indictment was constructively amended, but argues that it was amended in form and not in substance and that the amendment thus was permissible.

■■ "An indictment may be amended in form, but not in substance." *State v. Erickson*, 129 N.H. 515, 519, 533 A.2d 23, 25 (1987) (citing RSA 601:8; *State v. Spade*, 118 N.H. 186, 189, 385 A.2d 115, 116–17 (1978)); *State v. Donovan*, 128 N.H. 702, 705, 519 A.2d 252, 255 (1986). An impermissible amendment, for example, would be one that "effect[s] a change in the offense charged, or . . . add[s] an offense." *State v. Spade, supra* at 189, 385 A.2d at 116 (citation omitted); *Erickson, supra* at 519, 533 A.2d at 25 (citing *State v. Bell*, 125 N.H. 425, 429, 480 A.2d 906, 909 (1984)) ("[a]n element of an offense is considered part of the substance of an indictment").

■ However, indictments may be amended in form, for such amendments do not jeopardize the right to be tried only on charges that have been passed on by a grand jury required by RSA 601:1. *See generally State v. Miner*, 122 N.H. 86, 441 A.2d 1150 (1982) (State need not prove defendant used exact words alleged in indictment); *State v. Greenwood*, 113 N.H. 625, 312 A.2d 695 (1973) (State need not prove precise manner of assault specified in indictment).

In *State v. Fennelly*, 123 N.H. 378, 461 A.2d 1090 (1983), the indictments in question inaccurately identified the owners of stolen property. The State was permitted to amend the indictments to correct the errors. Similarly, in *State v. Baillargeon*, 124 N.H. 355, 470 A.2d 915 (1983), a second-degree murder case, the trial court allowed the State to amend a reference to the number of blows inflicted upon the victim stated in the amendment. We found the alteration "had no effect on the State's burden of proof; and the State's failure to establish a precise number of blows had no significant bearing on the sufficiency of its case." *Id.* at 362, 470 A.2d at 920.

"[W]e have noted many times that '[t]he test [for the sufficiency of an indictment] is not whether the information could be more comprehensive and certain, but only whether the indictment meets the basic requirements of specificity and fair notice.'" *State v. Day*, 129 N.H. 378, 380, 529 A.2d 887, 888 (1987) (quoting *State v. Sands*, 123 N.H. 570, 589, 467 A.2d 202, 213 (1983) (citations omitted)). "Thus, to be sufficient, an indictment must state the elements of the offense." *Day*, *supra* at 380, 529 A.2d at 888. An essential element of the offense proscribed by RSA 632-A:2, IV is coercion, particularly "[w]hen the actor coerces the victim to submit by threatening to retaliate against the victim . . . and the victim believes that the actor has the ability to execute these threats in the future." Nowhere, in the plain meaning of the statute, is there a requirement that the threat be overt.

We would like to note that the defendant has misplaced reliance on *State v. Erickson*, 129 N.H. 515, 533 A.2d 23. In *Erickson*, we found that the trial court had impermissibly altered the indictment when it altered a statutorily defined variant of a material element of a crime. Here, the trial judge did not alter the statutory definition of "coercion by threats to retaliate." As we have stated, the statute, RSA 632-A:2, IV, does not specify or demand that the threats be express. The judge's charge did not alter the indictment so as to permit conviction of an uncharged offense, as the defendant contends, but rather, as the State argues, permitted the jury to convict the defendant even if it found that coercion by threatening to retaliate existed, but in a manner different from that specified in the indictment.

The defendant further argues that this change in the indictment prejudiced him in his ability to present his case. His argument is without merit. As we stated in *Spade*, 118 N.H. at 189–90, 385 A.2d at 117, "We agree that an amendment to an indictment might be disallowed, or might constitute ground for a new trial, if the amendment surprises the defendant and this surprise prejudices his defense." *Accord Erickson*, 129 N.H. at 519, 533 A.2d at 25; *State v. Fennelly*, 123 N.H. at 388, 461 A.2d at 1094; *State v. Day*, 129 N.H. at 380, 529 A.2d at 888. The record shows us that at least two months before trial, the defendant was on notice that the State intended to prove coercion using evidence of prior acts, and defense counsel was allowed extensive cross-examination of the victim at the *Barker* hearing.

The defendant's third argument is that the trial court erred when it did not fully instruct the jury during its supplemental charge, thereby reducing the State's burden of proof.

The defendant points out that the element of coercion contains two parts: that of the defendant's acts and that of the victim's state of mind. The defendant argues that the court's mid-deliberation answer focused solely on the victim's mental state and not on the defendant's acts. The State disagrees and further argues that the defendant did not properly preserve this for appeal because he objected on the ground that the court's response "would allow the jury to go outside the indictment and the bill of particulars," and did not challenge the legal sufficiency of the charge: to wit, whether the charge must address the defendant's acts. We agree that this issue has not been properly preserved, and therefore will not consider it.

The defendant concedes that he objected to the charge only on the aforementioned ground, but he contends that the instruction is "patently incorrect as a matter of law" in that it reduced the State's burden of proof. The defendant claims that we should consider his claim to correct this "manifest error and serious injustice."

As a general rule, we "will not consider grounds of objections not specified or called to the court's attention at the trial." *State v. Cassell*, 129 N.H. 22, 24, 523 A.2d 40, 41 (1986); *see, e.g., State v. Laliberte*, 124 N.H. 621, 474 A.2d 1025 (1984); N.H. R. Ev. 103(b)(1). This requirement, grounded in common sense and judicial economy, "affords the trial court an opportunity to correct an error it may have made and is particularly appropriate where an alleged error involves a jury instruction." *State v. Nadeau*, 126 N.H. 120, 125, 489 A.2d 623, 626 (1985). Furthermore, unlike the "Federal 'plain error rule,' New Hampshire deems any objection not raised at trial to be waived and may not . . . be considered on appeal." N.H. R. Ev. 103 comment. *Compare* N.H. R. Ev. 103 *with* FED. R. EVID. 103(d). "Errors discovered by combing the record after trial and never properly presented to the trial judge should not be utilized to set aside a verdict." *State v. Cass*, 121 N.H. 81, 83, 427 A.2d 1, 3 (1981).

Lastly, the defendant argues that the State failed to prove coercion beyond a reasonable doubt because the State did not prove overt coercion on the date specified in the bill of particulars. Prior to trial, the defendant moved for a bill of particulars stating the place and time of the crime. The motion was granted by the Court (*DiClerico*, J.), and the State complied, specifying that the act occurred in the Johnson home between the hours of 10:00 p.m. and

midnight. A second motion for a bill of particulars for a date was filed, and the State specified the date of the offense as September 13, 1985.

At the close of the State's case, the defendant moved for a directed verdict on the ground that the State had failed to show coercion. The motion was denied. At the end of trial the defendant renewed his motion, which was once again denied.

 Although the exact date of the sexual assault is not required for an offense under RSA 632-A:2, *see State v. Lakin*, 128 N.H. 639, 640, 517 A.2d 846, 847 (1986), "when a particular date is furnished by the State in a bill of particulars, the State must prove beyond a reasonable doubt that the offense occurred on that date." *State v. LaCasse*, 129 N.H. 651, 653, 531 A.2d 327, 328 (1987). Thus, on appeal, "the standard for determining whether the State has met its burden on this issue is 'whether on all the evidence, and all reasonable inferences from it, considered in the light most favorable to the State, any rational trier of fact could have concluded beyond a reasonable doubt that the [defendant coerced the victim on September 13, 1985].'" *State v. Meekins*, 127 N.H. 777, 778, 508 A.2d 1048, 1049 (1986) (quoting *State v. Boire*, 124 N.H. 622, 625, 474 A.2d 568, 570 (1984)); *accord State v. LaCasse, supra* at 653, 531 A.2d at 328–29; *State v. Smith*, 127 N.H. 433, 436–37, 503 A.2d 774, 776 (1985).

The defendant's argument rests on his belief that the State is required to prove an *express* threat. However, as we discussed at the beginning of this opinion, neither the statute nor the facts of this case require proof of an express threat; evidence of implied threats is sufficient.

 The record before us, viewed in the light most favorable to the State, shows ample evidence from which a reasonable jury could conclude beyond a reasonable doubt that the defendant impliedly coerced his stepdaughter on the night in question. We find no error in the trial court's rulings and therefore affirm the defendant's conviction.

*Affirmed.*

All concurred.