Hillsborough
No. 88-383

# The State of New Hampshire

## v.

# Leonard Kulikowski, Jr.

October 6, 1989

*John P. Arnold*, attorney general (*Monica A. Ciolfi*, assistant attorney general, on the brief and orally), for the State.

*Gormley & Kaklamanos P.C.*, of Nashua (*Arthur O. Gormley, III*, on the brief and orally), for the defendant.

JOHNSON, J. The defendant, Leonard Kulikowski, Jr., was convicted of three counts of aggravated felonious sexual assault, RSA 632-A:2, III, and one count of incest, RSA 639:2, following a jury trial. On appeal, he contends that the trial court erred: (1) in ruling that the indictments alleging aggravated felonious sexual assault were constitutionally sufficient to apprise the defendant of the offense so that he could prepare for trial, and that the bill of particulars cured any lack of specificity in those indictments; (2) in finding that the indictments alleging aggravated felonious sexual assault were not barred by the applicable statute of limitations; (3) in admitting testimony of prior bad acts; and (4) in denying the defendant's motion to dismiss based on the insufficiency of the evidence at the completion of the State's case. We find no error and affirm.

The facts are briefly as follows. In 1966, the defendant and the victim's mother were married. The victim was then age three. The three of them lived in the upstairs apartment of the defendant's parents' home in Nashua until 1968, when the victim's mother died. Following her death, the defendant and the victim moved downstairs with the defendant's parents, who assumed legal custody of the victim and the primary responsibility for her upbringing. In 1975, when the victim was twelve years old, her stepgrandfather died.

The victim testified to the following facts. After her stepgrandfather's death, her stepfather took over as primary caretaker. He refused to allow her to attend social functions and required her to dress in a particular manner. As she got older, he became more violent, slapping her when she argued with him, accusing her of having sex with boys at school, and beating her when she denied his accusations. From the time she was seventeen, the defendant

would frequently wake her in the middle of the night with a flashlight and interrogate her about sex.

She testified as to a particular incident which occurred in 1980, when she was seventeen years old, which began when the defendant accused her of having sex with a boy at school. When she denied the accusation, the defendant started to beat her. He then tore off her clothes and continued to beat her. He then took her out into the woods, where he ran the blade of a knife down her chest saying, "I'm going to cut you open," and that he would leave her there to die. Two days later, he again accused her of having sex. This time, according to her testimony, the defendant told her to take off her clothes and lie in a chair. He then took a carving fork, ran it along her stomach, and told her that he was going to "rip" her up.

The victim testified that in the years following these two occurrences she and the defendant had sexual relations a number of times. In October, 1986, according to the victim's testimony, she and the defendant had a fight, during which she sustained a black eye. A co-worker later noticed the victim's black eye, and with the encouragement of the co-worker and their employer, the victim reported the abuses to the Nashua Police Department.

The defendant was indicted on seven counts of aggravated felonious sexual assault and two counts of incest. In February, 1987, the defendant filed a motion to quash or dismiss the indictments for aggravated felonious sexual assault on the ground that the indictments were constitutionally deficient in that they failed to allege that the defendant had "threaten[ed] to use physical violence or superior strength on the victim," which is an element of the crime charged, see RSA 632-A:2, III, or to enumerate the facts necessary to establish the elements of the offense. The defendant further argued that the indictments were barred by the applicable statute of limitations, RSA 625:8, because they relied on threats which occurred more than six years prior to the defendant's arrest. Following a hearing, the Court (Murphy, J.) denied the defendant's motion, but ruled that the defendant was entitled to a bill of particulars.

In November, 1987, both the defendant and the State filed motions in limine. The Court (Dalianis, J.) denied the defendant's motion, which requested an order prohibiting the State from introducing evidence of the knife and carving fork incidents described above. Regarding the State's motion, the Court (Dalianis, J.) ruled that it would permit the introduction of evidence "as to so-called threats or coercive behavior whether criminal or not," but would not allow the introduction of evidence of "other sexual acts

which remain unindicted, unless it becomes apparent to the Court that the issues of 'intent, motives, state of mind and continuous course of conduct' are actually in serious dispute ...."

A jury trial was held in July 1988. At the trial, the victim testified to the alleged sexual assaults. Following the close of the State's case, the defendant's counsel made a motion to dismiss for insufficient evidence, which was denied. The defendant then testified on his own behalf, denying that any abuse or sexual contact had occurred between the defendant and victim. On the third day of deliberation, the jury returned a verdict of guilty as to three counts of aggravated felonious sexual assault and one count of incest. This appeal followed.

We first address the defendant's claim that the indictments alleging aggravated felonious sexual assault were constitutionally insufficient, see N.H. CONST. pt. I, art. 15, and that the bill of particulars failed to cure the insufficiency. Part I, article 15 of the New Hampshire Constitution provides that "[n]o subject shall be held to answer for any crime, or offense, until the same is fully and plainly, substantially and formally, described to him ....." Two of the indictments for aggravated felonious sexual assault on which the defendant was convicted were identical except for the specific date and specific act of sexual penetration. Each provided:

"... on or [between a particular date or dates] at Nashua ... [the defendant] ... did, purposely engage in sexual penetration, to wit: [a particular act] with [the victim] (DOB 3-6-63), not his legal spouse, when having coerced the victim to submit to his sexual demands or else be subject to physical violence on numerous previous occasions, he again coerced the victim to submit by demanding that she [submit or engage in the particular act] and she believed that he had the present ability to execute the threat of physical violence at this time."

The third indictment stated that the defendant, on or between a particular date, did purposely engage in sexual penetration with the victim,

"... when the defendant coerced [the victim] to submit, having threatened to use physical force against her on numerous previous occasions, and having used physical force on [the victim] in the past if she did not submit to sexual demands, he demanded that she perform [a sexual act] upon him, and [the victim] believed that [the defendant] had the present ability to execute those threats."

The defendant argues that these indictments failed to allege the element of coercion by present threats, in that the first two indictments alleged only "coercion by demanding" and the third indictment alleged coercion by "past threats and past physical force." We disagree.

RSA 632-A:2, III provides that a person is guilty of aggravated felonious sexual assault if he engages in sexual penetration with another person "[w]hen [he] coerces the victim to submit by threatening to use physical violence or superior physical strength on the victim, and the victim believes that the actor has the present ability to execute these threats." Although we agree with the defendant that under RSA 632-A:2, III the threat and sexual penetration must be close in time, the present threat need not be explicit. *See State v. Johnson*, 130 N.H. 578, 581–82, 547 A.2d 213, 215 (1988). The threat may be implicit, arising from earlier incidents. *See id.* at 582, 547 A.2d at 215. The three indictments in the instant case clearly alleged present coercion occasioned by repeated prior threats. The indictments thus clearly alleged the element of coercion "by threatening." *See State v. Inselburg*, 114 N.H. 824, 827, 330 A.2d 457, 459 (1974).

The defendant also argues that the indictments were insufficient because they failed to enumerate the facts and circumstances establishing the element of coercion by threatening. He contends that he did not know whether he had to prepare to meet overt, implicit, past or present threats. However, we have already indicated that the allegations of repeated prior threats in the indictments clearly alleged the element of coercion by threatening. The bill of particulars, as well, enumerated prior threatening acts, including the knife and carving fork incidents. We note that although the defendant did not receive the bill of particulars until just before the beginning of the trial, for reasons not relevant here, defense counsel stated that he knew that there was a claim of an abusive relationship. Furthermore, although defendant's counsel moved that the court compel the State to be more specific, he did not request a postponement of the trial on the ground that he was surprised that the State intended to prove prior threats as the basis of the implicit threats at the time of the assaults. We therefore hold that the defendant was adequately informed "of the offense for which he [was] charged with sufficient specificity so that he [knew] what he [had to] be prepared to meet ...." *State v. Inselburg*, 114 N.H. at 827, 330 A.2d at 459.

■ The defendant also argues that the indictments alleging aggravated felonious sexual assault were barred by the statute of limitations, *see* RSA 625:8, because the State relied on threats that had occurred more than six years prior to the date of the arrest warrant to satisfy the element of coercion by threatening, *see* RSA 632-A:2, III. We find no merit in this contention. In his brief, the defendant uses this issue to argue again that the State failed to prove that a threat was made on the incident date. Implicit in the defendant's argument is a failure to recognize what we have just noted, that there need not be an overt threat to satisfy the requirements of RSA 632-A:2, III. Furthermore, even if the State had alleged only prior threats occurring more than six years before the warrant date, the statute of limitations would not prevent prosecution. RSA 625:8, IV provides that "[t]ime begins to run [for the purpose of the statute of limitations] on the day after all the elements of an offense have occurred." Since the defendant was not prosecuted for merely threatening the victim more than six years prior to the date of the warrant, but for committing aggravated felonious sexual assault within the limitations period, RSA 625:8 does not bar the indictments.

The defendant argues that the court abused its discretion when it admitted evidence of "prior bad acts" committed by the defendant. Although the court denied the introduction of evidence of "other sexual acts" that were not part of the indictment, it permitted evidence of "threats or coercive behavior," including testimony of the knife and carving fork incidents. The defendant contends that it was never demonstrated that this evidence offered by the State met the three-pronged test to determine the admissibility of prior offense evidence under New Hampshire Rule of Evidence 404(b). *See State v. Trainor*, 130 N.H. 371, 374, 540 A.2d 1236, 1238 (1988). He contends specifically that there was no "clear proof" that the defendant had committed the acts, the State having proceeded by an offer of proof, and there were no findings by the court indicating what the evidence could be used for, or whether the probative value of the evidence outweighed the danger of prejudice.

■ New Hampshire Rule of Evidence 404(b) provides:

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof

of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

We have before held that the trial court may admit evidence of "other crimes, wrongs, or acts" only upon a determination "that the evidence is relevant for a purpose other than character or disposition, that there is clear proof that the defendant committed the prior offenses," *Trainor supra* (citing *State v. Barker*, 117 N.H. 543, 546, 374 A.2d 1179, 1180 (1977)), and that the "prejudice to the defendant does not substantially outweigh the probative value of the evidence." *Trainor, supra* at 375, 540 A.2d at 1239. Although this test must be applied before evidence of "other crimes, wrongs or acts" may be admitted, Rule of Evidence 404(b) and its requisite test are not applicable here, as the evidence of the "threats or coercive behavior" in this case was not evidence of "other crimes, wrongs, or acts." Rather, it constituted evidence of the very threat which coerced the victim during the assaults in question. *See* J. WEINSTEIN & M. BERGER, WEINSTEIN'S EVIDENCE ¶ 404[10], at 404–77, 404–79 (1988). Evidence of the prior explicit threats was thus not admitted to support an inference of a fact relevant to the case, such as motive, opportunity or intent. *See* WEINSTEIN'S EVIDENCE ¶ 404[11], at 404–81. The explicit prior incidents gave rise to the threat, an element of the charged offense, at the time of the assaults. This threat, demonstrated by the knife and carving fork episodes, for example, could have been found to have been continuous and ongoing, and implicit at the time of the offenses in question. Thus, the applicable test for admissibility in this instance is contained in Rule of Evidence 403, which provides that relevant evidence may be excluded on the grounds of prejudice, confusion or waste of time. We find no abuse of discretion, *see State v. Brooks*, 126 N.H. 618, 625, 495 A.2d 1258, 1263 (1985), in the court's implicit finding that the probative value of the evidence of the threat was not "substantially outweighed by the danger of unfair prejudice ...." N.H. R. Ev. 403.

■ Lastly, the defendant argues that because the State failed to present evidence of a contemporaneous threat, the court erred in denying his motion to dismiss at the conclusion of the State's case. When this motion was made, the court ruled:

"[T]aken in the light most favorable to the State, the evidence could support a finding that the claimed constant, pervasive and unrelenting threatening atmosphere in which the alleged victim lived with the defendant was sufficient to establish the element of [coercion] . . ., provided

that the jury finds, beyond a reasonable doubt, a nexus between the general threats and the coercion in each specific case."

We hold that the evidence supports the conclusion that for each act for which the defendant was convicted, the victim had been coerced by the implicit threat of physical violence. In examining the record, we find much testimony by the victim as to her great fear of her stepfather following the knife and carving fork incidents. Further, for each act of aggravated felonious sexual assault for which the defendant was convicted, the victim testified as to the coercion she experienced during the assault as a result of the earlier explicit threats and threatening atmosphere. For example, in discussing one of the incidents, she testified:

"I knew I had to do [the sexual act] because of the incidents in the past where I felt that I was going to be killed if I didn't tell him ... things that he wanted to hear. I felt that if I didn't do what he wanted me to do, he would start beating me again like he had when I didn't tell him what he wanted to hear."

We find that the evidence supports the conclusion that the defendant "coerce[d] the victim to submit by threatening to use physical violence or superior physical strength," and therefore hold that the court properly denied the defendant's motion to dismiss.

*Affirmed.*

All concurred.