Merrimack
No. 89-567

THE STATE OF NEW HAMPSHIRE

v.

JOHN DALPHOND

January 28, 1991

*John P. Arnold*, attorney general (*David S. Peck*, senior assistant attorney general, and *Claire L. Gregory*, assistant attorney general, on the brief, and *Mr. Peck* orally), for the State.

*James E. Duggan*, chief appellate defender, of Concord, by brief and orally, for the defendant.

BROCK, C.J.   The defendant, John Dalphond, was convicted after a jury trial of four counts of aggravated felonious sexual assault, RSA 632-A:2, X (Supp. 1990), committed against his fifteen-year-old stepdaughter. On appeal, he argues that the Superior Court (*Dunn*, J.) erred, first, in admitting into evidence an adult magazine belonging to the defendant, entitled *Family Touch*, and second, in allowing testimony allegedly describing instances, other than those charged in the indictments, of the defendant's sexual misconduct with his stepdaughter. For the reasons that follow, we affirm the defendant's convictions.

The four indictments against the defendant were based on a series of sexual assaults that occurred over a four-day period in March of 1986. These assaults of his stepdaughter involved both digital penetration and sexual intercourse. During the investigation of the case against the defendant, his wife, who was also the mother of the victim, delivered to the Merrimack County prosecutor's office a box of sexually related books and magazines belonging to the defendant. Among these materials were three magazines, entitled *Family Touch*, *Family Letters*, and *Family Affairs*, which the State, by motion, sought to admit into evidence during its case-in-chief against the defendant.

At the pretrial hearing on the motion, the State alleged that the three magazines, all of which contained themes and articles involving incestuous relationships, were similar to magazines that the victim had seen the defendant reading during the period of the assaults. Consequently, the State argued that the magazines were relevant to prove the defendant's criminal intent and also to show the nature of his relationship with his stepdaughter during the assaults. The de-

fendant disagreed and argued that, under New Hampshire Rule of Evidence 404(b), the magazines were inadmissible, because their only relevance was to illustrate the defendant's bad character. Alternatively, he argued that, to whatever degree the magazines were relevant for proper purposes, their relevance was substantially outweighed by the unfair prejudice caused by allowing the jury to review the magazines.

The trial court agreed, in part, with both the State and the defendant. It ruled that, although the three magazines were probative on the issue of intent and preparation, admitting all three into evidence would be unnecessarily cumulative and unfairly prejudicial to the defendant. The trial court concluded, however, that these dangers would be sufficiently reduced by admitting just one of the magazines. Accordingly, the State chose *Family Touch* as the one to be placed into evidence.

*Family Touch* is a monthly periodical, containing articles, sketches, letters, photographs and advertisements that explicitly describe and encourage a variety of sexual encounters. As the title suggests, however, the principal theme of the magazine focuses on incestuous relationships. The front cover of the specific issue in question reflects this theme by highlighting three feature articles: "She Strips For Daddy," "I Made It With Mom," and "A Sister Confesses: 'Water Sports With My Brother.'" The issue also contains other articles, as well as a number of lengthy letters from readers, regarding sexual relations between various family members. Although the issue contains some non-incestuous materials, no other topic is as prevalent as the topic of incest.

At trial, the victim's testimony supported the State's position at the pretrial hearing that magazines similar to *Family Touch* were used in connection with the assaults. She testified that the defendant kept "smut books" throughout their home, and she described these materials as "dirty stories that people write·. . . to . . . publishers, stories about affairs and sexual relations between parents and children and aunts and uncles." She knew about their content because the defendant had made her read from them, and she identified *Family Touch* as a magazine that looked "like one of the books that was always lying around the house." She also testified that she saw her stepfather reading from a book similar to *Family Touch* just before he sexually assaulted her.

The trial court instructed the jury, once when the magazine was admitted into evidence and again during the final jury instructions,

that the magazine should be considered only as evidence on the issues of the defendant's intent and preparation to commit the charged offenses. The court explained that the defendant was not charged with any crime related to the possession of the magazine and that the magazine must not be considered as evidence illustrating the defendant's character.

■ New Hampshire Rule of Evidence 404(b) provides that:

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

Before allowing "bad acts" evidence to go before the jury, the trial court must preliminarily determine whether (1) the "'evidence is relevant for a purpose other than showing the character or disposition of the defendant,'" *State v. Hickey*, 129 N.H. 53, 60, 523 A.2d 60, 65 (1986) (quoting *State v. Barker*, 117 N.H. 543, 546, 374 A.2d 1179, 1180 (1977)); (2) there is clear proof that the act at issue was committed by the defendant, *id.*; and (3) the "prejudice to the defendant does not substantially outweigh the probative value of the evidence," *State v. Trainor*, 130 N.H. 371, 375, 540 A.2d 1236, 1239 (1988).

The defendant first argues that prior to admitting "bad acts" evidence, the trial court must make specific findings on the record that the evidence at issue complies with each of the three prongs under the Rule 404(b) analysis. According to the defendant, when the trial court admitted *Family Touch* into evidence, it failed to make the requisite finding with regard to the second prong of the Rule 404(b) analysis and, as a result, failed to adequately consider whether there was clear proof showing that the magazine was used during the time period covered in the indictment.

■ The flaw in this first argument, however, is that it elevates form over substance. The defendant asks us to reverse his conviction based on the trial court's alleged failure to enunciate on the record its findings under the second prong of the Rule 404(b) analysis. While, in every case, we would strongly encourage the trial court to assist our review by making specific findings to support its evidentiary rulings, the failure to do so, in and of itself, does not require reversal.

█ In reviewing the defendant's assertion that the trial court failed to adequately consider the second prong of the Rule 404(b) analysis, we ask whether the trial court abused its discretion in its determination to admit the magazine. *See State v. Johnson*, 130 N.H. 578, 584, 547 A.2d 213, 216 (1988). In order to be successful on appeal, the defendant must demonstrate that the trial court's ruling was "clearly untenable or unreasonable to the prejudice of [the defendant's] case." *State v. Parker*, 127 N.H. 525, 532, 503 A.2d 809, 813 (1985), *quoted in State v. Johnson supra.* The defendant has failed to meet this burden.

█ The record clearly shows that the defendant possessed and used a "smut book" similar to *Family Touch* during the four-day assault period. The fact that the victim was unable to identify *Family Touch* as the particular magazine involved in one of the assaults does not weaken the court's ruling on the magazine's admissibility. The victim's description of the contents of her stepfather's "smut books" was sufficiently similar to the contents of *Family Touch* to meet the standards of Rule 404(b). That being so, we find no abuse of discretion.

The defendant's second argument is that the prejudice caused in admitting the entire contents of *Family Touch* into evidence substantially outweighed its probative value and that, therefore, the trial court should have admitted only those materials from the magazine pertaining to incestuous relations. Contrary to his assertion on appeal, however, the defendant never raised this argument at the trial court. His general objection at trial was based on the prejudicial effect of admitting the three magazines into evidence, which is a distinctly different question from the issue he now argues on appeal. The defendant having failed to afford the trial court an opportunity to address the question of the prejudicial effect of the non-incestuous materials in *Family Touch*, we decline to decide the issue on appeal. *See State v. Gruber*, 132 N.H. 83, 94–95, 562 A.2d 156, 163 (1989); *State v. Johnson, supra* at 587, 547 A.2d at 218.

Finally, the defendant argues that the trial court abused its discretion in permitting the jury to consider certain testimony from the victim. Specifically, he asserts that the victim's testimony included alleged references to instances of the defendant's sexual misconduct with his stepdaughter which were not covered in the indictments against him and that, consequently, he was prejudiced by the jury's discovery that the indicted acts were not isolated but were part of a

long-standing pattern. After a careful review of the record, we disagree.

Originally, the State charged the defendant with seven counts of felonious sexual assault, three of which allegedly occurred in 1981 and were severed from the trial in this case. The remaining four counts represent the assaults that led to the convictions from which he now appeals. Prior to the trial in this case, the State, in a motion *in limine*, requested that the victim be permitted to testify about repeated sexual contacts between herself and the defendant during a period from 1981 to 1986. The trial court denied the State's motion.

The defendant claims that in four instances the victim testified to misconduct beyond the scope of the indictments, and thus he was prejudiced by the trial court's overruling of his objections to the testimony. In her testimony about the first assault of the March, 1986 period, the victim stated:

"Q. Tell us, please, what happened that day.

A. I went to school as usual, came home, did my chores, had supper, did my nightly chores and then went to bed.

Q. About what time did you go to bed?

A. My usual time was around 9:00. I was old enough now so I could stay up 'til 9:00 and then went to bed, and then, *as usual*, my father came in."

(Emphasis added.) Again regarding the first assault, after she described the defendant's digital and sexual penetration of her, she testified:

"Q. Did he say anything to you at that time?

A. Nothing real important. He *often* said things like, 'I know you're not going to tell.'"

(Emphasis added.) Thereafter, while describing the second assault against her, she testified:

"Q. How did you react?

A. *Sometimes*, you know, because my legs were spread, I would close my legs and tell him to stop, but I just—"

(Emphasis added.) Finally, also during her description of the second assault, she testified:

"Q. When he was finished, what did you do?

A. I got up, went in the bathroom and took my morning shower and got ready for school.

Q. Where was your father while you were doing that?

A. *Sometimes* he would be in the bathroom going—"

(Emphasis added.)

■ Contrary to the defendant's argument, this testimony hardly rises to the level of evidence of prior bad acts. *See State v. Woodbury*, 124 N.H. 218, 221, 469 A.2d 1302, 1305 (1983). As previously noted, the charges against the defendant spanned a four-day period. The victim's general references to occasions other than the specific instance about which she was testifying were consistent with the State's indictments that the defendant's unlawful conduct covered a four-day period. The testimony makes no explicit reference to other instances of the defendant's sexual misconduct, nor does it require a reasonable juror to conclude that the defendant sexually assaulted the victim on occasions other than those included in the four-day period covered by the indictments. Accordingly, we, again, find no abuse of discretion.

*Affirmed.*

All concurred.