Belknap
No. 90-016

# The State of New Hampshire

v.

# James Torrence

March 13, 1991

*John P. Arnold*, attorney general (*David S. Peck*, senior assistant attorney general, on the brief and orally), for the State.

*W. Kirk Abbott, Jr.*, assistant appellate defender, of Concord, by brief and orally, for the defendant.

BROCK, C.J. The defendant, James Torrence, was convicted of robbery (RSA 636:1, I), following a jury trial in the Superior Court (*Barry*, J.). He brings this appeal, arguing that the trial court erred in three ways: first, in permitting evidence of flight to go before the jury; second, in instructing the jury on a lesser-included offense without having a rational basis to do so; and, finally, by "repeatedly" repolling the jury until each juror announced a verdict of guilty. Because we find no error on the part of the trial court, we affirm the defendant's conviction.

There is no dispute as to the underlying facts. On September 7, 1988, the defendant joined his brother, John Torrence, and two others, Roger Laraway and Charles Pitkin, for a ride in Laraway's car. After purchasing some beer and liquor, they drove around until they decided to park along the side of the road in order to "party."

During their "partying," an altercation started between the Torrences and Pitkin. Although the testimony differed as to how the incident began, there is no dispute as to what occurred once it was underway. John Torrence, who was wearing an arm cast, approached Pitkin from behind and struck him in the head with the cast and then kicked him repeatedly. Meanwhile, the defendant pushed past Laraway and joined his brother in the assault. The Torrences kicked Pitkin until he lay semiconscious on the ground, and then they went through his pants pockets and took the money they found there. John Torrence then threw Pitkin into a nearby stream, at which point, the Torrences and Laraway returned to the car and departed.

As a result of the assault, Pitkin suffered broken bones in his wrist and arm, as well as cuts and bruises on his face.

The defendant was indicted for robbery involving serious bodily injury, a class A felony, *see* RSA 636:1, III (Supp. 1990), but was ultimately convicted of the lesser-included offense of robbery without serious bodily injury, which is a class B felony, *see* RSA 636:1, I. After trial, he filed motions to set aside the verdict and for a mistrial, which the trial court denied. He now brings this appeal.

Prior to the trial, the defendant filed a motion *in limine* to exclude the testimony of his former girl friend, Edna Cupples, regarding his flight to the State of Washington. After his arrest and release on bail, the original indictment was dismissed without prejudice, and it was a month before he was reindicted on the charge. According to the defendant, it was during this one-month period, when he was not under indictment, that he left New Hampshire and went to Washington. At trial, during the hearing held on the motion *in limine*, he argued that the State was unable to "establish that [he] had left the State for the purpose of avoiding prosecution," and, therefore, any alleged evidence of his flight would have a "high potential for prejudice" when balanced against its "minimal probative value."

The State responded by pointing to Cupples's pretrial deposition, during which she stated that the defendant robbed a taxi stand in order to get money to leave town and that he travelled to Washington to avoid prosecution of the charges pending against him. After a hearing, the trial court ruled that Cupples could testify as to the defendant's discussions about leaving the State, but not about his discussion of robbing a taxi stand. At trial, when she was asked whether the defendant had ever said why he wanted to leave for Washington, Cupples responded, "[s]o we could be together and so we could leave the charge."

The defendant first argues on appeal that the trial court failed to make on-the-record findings that demonstrated a balancing by the court of the testimony's prejudicial effect against its probative value. He asserts that the trial court, having failed to make such findings, abused its discretion in allowing the testimony.

 We have stated before that, although on-the-record factual findings under New Hampshire Rule of Evidence 403 are encouraged, the failure to make such explicit findings will not automatically result in a determination that the trial court abused its discretion. *See State v. Hotchkiss*, 129 N.H. 260, 264, 525 A.2d 270, 272 (1987); *see also State v. Dalphond*, 133 N.H. 827, 830, 585 A.2d 317, 320

(1991) (as applied to N.H. R. Ev. 404(b)). Moreover, in refusing to allow Cupples to testify about the defendant's alleged robbery of a taxi stand in order to acquire money to leave town, it is clear that the trial court did, in fact, engage in an assessment of the potential prejudicial effect of her entire testimony. Accordingly, we find no abuse of discretion in the trial court's failure to make on-the-record findings.

The defendant also argues that the State failed to show that his departure from New Hampshire raised an inference that he was fleeing due to his belief in his own guilt. He argues that absent this "factual predicate," Cupples's testimony was more prejudicial than probative. We interpret this argument as one challenging the trial court's threshold decision to admit Cupples's testimony.

It is beyond dispute that evidence of post-offense flight is probative on the issue of the defendant's consciousness of guilt. *State v. Cassell*, 129 N.H. 22, 23, 523 A.2d 40, 41 (1986). When presented with such evidence, the trial court makes the initial determination on its admissibility, N.H. R. Ev. 104(a), but it is for the jury to ultimately decide what weight and credibility should be given to the evidence, *State v. Guglielmo*, 130 N.H. 240, 245, 544 A.2d 25, 28 (1987). Thus, the trial court's ruling that evidence is admissible is given broad latitude, *see Fenlon v. Thayer*, 127 N.H. 702, 705, 506 A.2d 319, 321 (1986), and "will be upheld, absent an abuse of discretion," *State v. Bruce*, 132 N.H. 465, 468, 566 A.2d 1144, 1146 (1989).

The question, then, is whether the trial court's determination that Cupples's testimony regarding the defendant's departure from the State sufficiently supported an inference of the defendant's consciousness of his guilt constituted an abuse of discretion. Clearly the answer is no. Cupples's testimony, both during the deposition and at trial, unequivocally demonstrated that the defendant's departure from New Hampshire was in order to escape future criminal prosecution. Although flight motivated by fear of future criminal prosecution may support a variety of inferences, it undeniably supports a reasonable inference that the defendant was aware of his guilt. Accordingly, we find no abuse of discretion in the admission of Cupples's testimony.

The next issue raised by the defendant addresses the propriety of the trial court's jury instruction on a lesser-included offense. Although indicted and brought to trial on a class A robbery charge, the defendant was convicted of class B robbery, a lesser-included

offense which does not include the element of serious bodily injury found in class A robbery. *See* RSA 636:1. We have stated that it is proper to instruct a jury on a lesser-included offense when "the evidence furnishes a rational basis for a finding of guilt on the lesser offense but not on the greater offense." *State v. Howland,* 119 N.H. 413, 417, 402 A.2d 188, 191 (1979). The defendant does not argue that the evidence did not support his conviction on the lesser-included offense, but rather he argues that there was no lesser-included offense in this case based on the wording of the indictment.

The class A robbery indictment brought against the defendant alleged as follows:

> "that [the defendant] . . . did knowingly, in the course of committing a theft . . . inflict serious injury on . . . another . . . in that, [the defendant] *in concert with* John Torrence, did strike Charles Pitkin about the face and upper body, resulting in a broken arm, and the taking of approximately one hundred sixty dollars ($160.00) in U.S. currency from Charles Pitkin's pants pocket, said property belonging to Charles Pitkin."

(Emphasis added.) There is no dispute that the injuries alleged constitute a serious bodily injury, an element required for class A robbery. According to the defendant, since the indictment, in using the phrase "in concert with," charged him with accomplice liability, *see, e.g., State v. Thresher,* 122 N.H. 63, 69, 442 A.2d 578, 580–81 (1982), the jury would not have to find that he actually inflicted serious bodily injury in order to find him guilty of class A robbery. Thus, he argues that, having removed the noncommon element between the greater and lesser offenses of robbery, the trial court committed error by instructing the jury on the lesser-included offense of class B robbery.

■ The flaw in his argument, however, rests in the trial judge's instruction to the jury on class A robbery. The judge did not follow the language in the indictment and instruct the jury that they had to find only that the defendant "acted in concert with" his brother in committing serious bodily injury. Rather, the trial judge required the State to prove beyond a reasonable doubt that the defendant actually "inflicted serious bodily injury on another." Although this instruction was arguably inconsistent with the language in the indictment, defense counsel understandably did not object to the trial court's instruction, since it required the State to prove more than it was required to prove under the indictment. It is, however, this addi-

tional element of proof that justified the State's request for an instruction on the lesser-included offense of class B robbery. Accordingly, we hold that the trial judge did not err in instructing the jury on the lesser-included offense.

Finally, the defendant contends that the trial court abused its discretion in the manner in which it polled the jury. After the jury foreman announced that the jury had found the defendant not guilty of class A robbery, but guilty of the lesser offense of class B robbery, the defendant requested that the jury be polled. Pursuant to the request, the following exchange transpired:

"The Clerk: Juror number two, is the—how say you, is the defendant guilty or not guilty of the offense of robbery with the—excuse me—of the offense of robbery without the commission of serious bodily injury?

Juror 2: Not guilty.

The Clerk: So say you, juror number two?

Juror 2: Not guilty.

The Clerk: Number three, how say you?

Juror 3: Not guilty.

The Clerk: Number four?

Juror 4: Not guilty.

Juror 5: You'd have to repeat the question.

The Clerk: We'll start again.

Juror 4: You stumbled, and I got mixed up.

The Clerk: Juror number two, how say you, is the defendant, James Torrence, guilty of the offense of robbery without having inflicted serious bodily injury or not guilty?

The Court: The lesser included offense, in other words.

Juror 2: Guilty. No. Wait a minute. Now you got me confused.

The Clerk: Do you find—

Juror 2: The first question is—

The Court: Is the defendant guilty of the offense of robbery without having inflicted serious bodily injury or do you find him not guilty of that offense?

Juror 2: Not guilty. [The jurors respond collectively, "No. No. No. Guilty."]

The Clerk: Do you want me to start again? Mr. Foreman, you have found the defendant, James Torrence, guilty of the offense of robbery. He did not commit serious bodily injury, however; is that correct?

Mr. Foreman: Yes."

The clerk then asked each juror if this was his or her verdict, to which each responded "Yes".

The jury then returned to the deliberation room, whereupon defense counsel asked the trial court "for some relief regarding the nature of the jury polling in light of the questions and answers of particularly juror number two," and further requested "leave to file a written pleading within the next five days." After receiving the court's permission to do so, the following discussion occurred:

"Mr. Skibbie: I think that we all agree that the colloquy (for the de- between the Clerk and the jury was somefendant) what unusual and hard to follow, and I would—would it be possible to have just the verdict—from the verdict on transcribed to allow me to refer to that in preparing my pleading? [An off-the-record discussion is held between the Court and the Clerk.]

The Court: If you're going to allege any error, Mr. Skibbie, now is the time to correct it. Do you want the jury brought out again and re-polled?

Mr. Skibbie: Certainly, Your Honor. It's my position that when juror number two was asked—um— whether the defendant was guilty or not guilty of the offense of robbery without serious bodily injury she said not guilty. That is my recollection. That's why I'm asking—

The Court: Do you want the jury re-polled?

Mr. Skibbie: Yes.

The Court: Okay. Bring the jury out."

On the jury's return, the trial judge stated that "[w]hat happened with regard to the poll was a little bit unusual and may have been

somewhat confusing, so I'm going to go through the polling again." Thereupon, each juror unequivocally responded that he or she had found the defendant guilty of class B robbery. At the completion of the polling the trial judge asked, "All right, Mr. Skibbie?", to which defense counsel responded, "Thank you," and the jury was then dismissed. Subsequently, the defendant filed a "Motion to Set Aside the Verdict and Declare a Mistrial," wherein his only contention was that the repolling created a risk that juror number two's verdict was coerced. The motion was denied.

The defendant argues that the trial court abused its discretion in two ways during the repolling of the jury. First, he claims that the repeated repolling of the jury implicitly coerced juror number two into agreeing to a verdict consistent with the jury's collective verdict. We disagree.

■ On several occasions we have held that when reviewing a trial court's decision on whether or not to poll a jury, we will apply an abuse of discretion standard. *See State v. Pugliese*, 122 N.H. 1141, 1147–48, 455 A.2d 1018, 1022 (1982); *State v. Donovan*, 120 N.H. 603, 606, 419 A.2d 1102, 1104 (1980); *State v. Kenna*, 117 N.H. 305, 309, 374 A.2d 427, 430 (1977). We see no reason to depart from this standard. As one court has noted: "[I]n evaluating the trial court's polling procedure, since the trial judge is present on the scene, we must pay due deference to his views on whether the recalcitrant juror's ultimate acquiescence in the verdict came freely, without pressure from the court." *Amos v. United States*, 496 F.2d 1269, 1273 (8th Cir.), *cert. denied*, 419 U.S. 896 (1974), *cited with approval in United States v. Luciano*, 734 F.2d 68, 70 (1st Cir. 1984).

■ It is obvious from the above record that what occurred during the polling was confusion, not coercion. Although juror number two initially announced "not guilty" as her verdict, the events which followed made it clear that there was confusion as to which charge the jurors were being polled on. Not only did juror number two express confusion, but also defense counsel and the trial judge recognized that the polling had been "hard to follow" and "confusing." Moreover, after excusing the jury to the deliberation room, the court gave the defendant an additional opportunity, which was taken, to have the jury repolled again. Based on this record we cannot say that the trial court abused its discretion in attempting to dispel the confusion that had arisen.

Finally, the defendant asserts that when juror number two expressed a verdict inconsistent with the overall jury verdict, the trial

court should have stopped the polling and should have either declared a mistrial or requested the jury to return to the jury room for further deliberations. The problem with this argument, however, is that the defendant never raised it below, thus removing any opportunity for the trial court to address the alleged error. Having failed to do so, the defendant cannot now raise the argument on appeal. *See State v. Gruber*, 132 N.H. 83, 94–95, 562 A.2d 156, 163 (1989).

*Affirmed.*

All concurred.